John William BROWN, Appellee,

v.

Gerard FREY, Larry Trickey, Appellants,

Ron Kennedy, John Bain, J. Shanklin, Walter Fisher, Christie Lynch, Bernice Trickey, Appellants.

John William BROWN, Appellant,

v.

Gerard FREY, Larry Trickey, Ron Kennedy, Appellees,

John Bain, J. Shanklin, Walter Fisher, Christie Lynch, Bernice Trickey, Appellees.

Nos. 88–2643, 88–2736.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1989.

Decided Nov. 7, 1989.

Rehearing and Rehearing En Banc Denied Dec. 13, 1989.

Paul M. Rauschenbach, Jefferson City, Mo., for appellants.

Kathleen L. Pine, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and BOWMAN and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

John Brown (Brown), an inmate at the Missouri Eastern Correctional Center (MECC), sued various employees of MECC under 42 U.S.C. § 1983 (1982), alleging that the defendants deprived him of numerous constitutional rights including his right: (1) to call witnesses "and/or" counsel substitute at various disciplinary hearings; (2) to receive a hearing "within three working days" of confinement in administrative segregation; (3) to obtain access to the courts; (4) to obtain a fair and impartial disciplinary hearing; and (5) to receive an "adequate investigation" surrounding charges he made improper sexual gestures towards a ten-year-old girl in the prison visiting room. The district court granted defendants' motion for summary judgment on Brown's claim that defendants denied his right of access to the courts and granted defendants' motion for a directed verdict on Brown's claims that defendants abridged his right to a fair and impartial hearing and his right to an adequate investigation. The jury found defendants Lt. Col. Gerard Frey (Frey), Superintendent of MECC, Larry Trickey (L. Trickey), Assistant Superintendent of MECC, and Bernice Trickey (B. Trickey), a caseworker at MECC, liable under § 1983 for depriving Brown of his right to call witnesses "and/or" seek counsel substitute for his disciplinary hearings (hereinafter referred to as "right to witnesses 'and/or' counsel substitute"). The jury also found defendants Frey and Christie Lynch (Lynch), unit manager in Housing Unit 1, liable under § 1983 for violating Brown's right to a hearing within three working days following his confinement in administrative segregation (hereinafter referred to as "right to a hearing within three working days following confinement").

The questions presented by defendants' appeal include: (1) whether the district court erred in refusing to grant defendants' motion for directed verdict based on its conclusion that neither Frey nor Lynch were entitled to qualified immunity on Brown's claim that they deprived him of his right to a hearing within three working days following confinement; and (2) whether the district court erred in refusing to grant defendants' motion for directed verdict based on its conclusion that Frey, B. Trickey and L. Trickey were not entitled to qualified immunity on Brown's claim that they deprived him of his right to witnesses "and/or" counsel substitute. We hold that because defendants were entitled to qualified immunity on both claims, the district court erred in refusing to direct a verdict in favor of defendants. Therefore, the district court's judgment is reversed.[1]

Brown's cross-appeal presents four additional issues: (1) whether the district court erred in granting defendants' motion for summary judgment on Brown's claim that defendants denied him right of access to the courts by threats of transfer to another facility; (2) whether the district court erred in granting defendants' motion for a directed verdict on Brown's claim he was denied a fair and impartial disciplinary hearing because of the marital relationship of two

---

1. Because we hold that the district court erred in refusing to grant defendants' motions for directed verdict, it is not necessary to examine defendants' claims that the district court erred in denying defendants' motions for summary judgment, judgment notwithstanding the verdict or, in the alternative, a new trial.

Furthermore, defendants also argue on appeal that the district court erred in giving Jury Instructions 10, 11 and 12–A, and that the court erred in denying defendants' motion for judg-

ment notwithstanding the verdict or, in the alternative, a new trial, based on the claim that the record lacks any evidence supporting a verdict against defendant Frey. Because we find defendants Frey, Lynch, B. Trickey and L. Trickey are entitled to qualified immunity, these issues need not be discussed here and we express no opinion regarding them except insofar as Jury Instruction 11 identifies a right to be represented by counsel substitute.

hearing officers; (3) whether the district court erred in granting defendants' motion for a directed verdict on Brown's claim that defendants failed to adequately investigate charges of insulting behavior toward a ten-year-old girl in the prison visiting room before finding Brown guilty of the conduct violation; and (4) whether the district court erred in refusing to allow Brown to cross-examine Captain Ron Kennedy (Captain Kennedy), investigator at MECC, on his prior perjury conviction. We reject Brown's arguments on his cross-appeal and affirm the district court.

## I.

Brown was incarcerated at MECC from January 30, 1983 to March 6, 1985. He was then transferred to the Missouri State Penitentiary after MECC officials found him guilty of a conduct violation for insulting behavior. While incarcerated at MECC, prison officials charged Brown with numerous conduct violations. Only five of the violations provide the basis for Brown's § 1983 suit and the resulting appeal and cross-appeal.

On May 6, 1984, Brown was charged with a conduct violation for destruction of state property when he allegedly damaged a prison window screen. Following a hearing on May 9, 1984, at which the statements of two witnesses taken prior to the hearing were considered, the classification team found Brown guilty of the violation and ordered him to pay $2.50 to repair the screen. B. Trickey was a member of that team. L. Trickey, in his capacity as Assistant Superintendent of Programs, received the recommendation and, finding it insufficient, supplemented Brown's punishment with five days room restriction. B. Trickey and L. Trickey were married at all times during Brown's confinement. In reviewing L. Trickey's recommendation, Frey approved the punishment and issued an order to that effect. There is no claim that defendants violated Brown's constitutional rights in failing to call witnesses at this disciplinary hearing. Furthermore, although the evidence in the record supporting Brown's claim that he requested counsel substitute at this hearing is weak, we assume that he did in fact make that request when filling out the witness request form.[2]

On February 7, 1985, Brown received a conduct violation when a prison official found Brown's clothes in another inmate's laundry bag. On February 13, 1985, the classification team found Brown guilty and ordered him to perform an extra twenty hours of duty in the housing unit. Defendants called Brown's only requested witness to testify at his hearing. Brown indicated his desire to be represented by counsel substitute by completing the witness request form.

On February 21, 1985, Brown received another conduct violation for giving false information to prison officials.[3] Brown claimed that Captain Kennedy stated Brown could leave his personal property in his room while he was in administrative segregation. After Kennedy stated that he made no such statement, Brown was charged with the conduct violation. Brown then informed prison officials that he was not told personally by Captain Kennedy but by an inmate, Donnie Willen, that Captain Kennedy had told another prison official, Margaret Puff, who was stationed in a housing unit different from Brown's, that Brown could keep his personal property in his room. Brown requested that Puff and inmate Willen appear as witnesses at his disciplinary hearing. The classification team refused to call either witness. Defendants informed Brown that they would not call Puff because placing a guard in the position of testifying against another guard (Captain Kennedy) would undermine prison authority. At trial, B. Trickey elaborated on the reasons neither Puff nor Willen were called. She testified that the

2. This assumption will be made in each instance Brown alleges he requested counsel substitute. *See Jackson v. Prudential Ins. Co. of Am.,* 736 F.2d 450, 453 (8th Cir.1984) (party opposing motion for directed verdict receives benefit of all favorable inferences from the facts).

3. Brown's hearing on this conduct violation was held on February 26, 1989.

conduct violation as written did not involve either Willen or Puff and, because Puff worked in a different housing unit, she could not possibly have had anything to do with Brown's property.

Brown also claims that defendants abridged his right to seek counsel substitute to help him at this conduct violation hearing. Brown testified defendants took this action because they believed that since he was the prison law clerk, he could defend himself.

B. Trickey sat on the classification team which found Brown guilty of the false information violation. L. Trickey sat as a member of the Adjustment Committee which approved the recommendation. Superintendent Frey subsequently approved the recommendations of both committees.

On February 21, 1985, a prison official charged Brown with a conduct violation for having contraband (an unauthorized typewriter) in his cell. Brown requested three prison staff witnesses at his February 26, 1985 hearing to testify on his behalf: Major Paul Delo, Lieutenant Fred Arflack, and caseworker Rick Jones. The classification team rejected all three witnesses informing Brown that they did not want to undermine prison authority by having a guard testify against another guard (Delo and Jones against Officer J. Shanklin, the reporting employee) and that Lieutenant Arflack would be present at the hearing anyway and refused to offer any testimony helpful to Brown's case. At trial, B. Trickey testified that in addition to the reasons given Brown, Rick Jones was not called because he no longer worked with the Missouri Department of Corrections and Major Delo was not called because the disciplinary bodies already had his written statement. Even though Brown did not name counsel substitute on his witness request form, he testified he requested counsel substitute to assist him at his hearing.

B. Trickey was on the classification team which recommended Brown be punished for the contraband violation. L. Trickey was a member of the Adjustment Committee which approved the recommendation. Superintendent Frey ultimately approved and ordered the punishment.

On March 4, 1985, Brown received his final conduct violation as an inmate at MECC resulting in his transfer to the Missouri State Penitentiary. He received a violation for insulting behavior. This violation stemmed from allegations that over a six-month period Brown, who had been incarcerated for rape and sodomy, made improper sexual gestures toward a ten-year-old girl who, while accompanied by her mother, occasionally visited Brown and another inmate (hereinafter referred to as "insulting behavior charge"). Brown requested that two witnesses, inmates Donnie Willen and Ian Higgins, be produced on his behalf. Both Willen and Higgins were called as witnesses. At trial, Brown testified that he had also requested counsel substitute to aid him at his hearing. The classification team reviewed the insulting behavior charge on March 5, 1985 and referred it to the Adjustment Committee. The Adjustment Committee found Brown guilty on March 6 of the insulting behavior conduct violation toward the young girl. The Committee's findings were based upon the investigation conducted by the Division of Family Services, a report filed by Captain Kennedy and the statements of the young girl and her mother. B. Trickey sat on the classification team which referred the insulting behavior charge to the Adjustment Committee. The Committee, of which L. Trickey was a member, recommended that Brown be found guilty of the conduct violation. Myrna Trickey, the acting superintendent of MECC during Superintendent Frey's absence, approved and ordered the punishment. Myrna Trickey is not related to either B. Trickey or L. Trickey.

Captain Kennedy waited until he received the Department of Family Service's written report on March 4, 1985, concerning Brown's improper sexual gestures, to issue a conduct violation for insulting behavior. Captain Kennedy had ordered Brown confined in administrative segregation on February

18, 1985,[4] upon finding him to be an immediate security risk.[5] Captain Kennedy did not charge Brown with the conduct violation for over two weeks after his confinement in administrative segregation so that he could complete his investigation and obtain the Division of Family Service's written report. Brown received a hearing on his confinement in administrative segregation on March 5, 1985 before the classification team and on March 6, 1985 before the Adjustment Committee.[6] This fifteen-day delay exceeded the three-working-days delay permitted under Missouri law.[7]

At trial, Brown's counsel sought to question Captain Kennedy on his prior conviction for perjury. Although Captain Kennedy received a pardon for that conviction on April 20, 1988, the pardon did not state the basis for the governor's action. On July 25, 1988, three days after the trial had commenced, defendants presented an amended pardon which stated it was extended to Captain Kennedy based upon a finding of rehabilitation. Because of the finding, the district court refused to allow Brown to cross-examine Captain Kennedy on his prior conviction for perjury.

4. The Division of Family Services informed Captain Kennedy orally on February 18, 1985 of the results of its investigation into the charge Brown made improper sexual gestures towards the ten-year-old girl.

5. The mother of the ten-year-old girl persuaded Captain Kennedy that Brown might attempt to retaliate against her boyfriend, inmate Ian Higgins.

6. Although there is evidence in the record to support the position that Brown received a hearing within five days, we view the evidence in favor of Brown, who opposed the motion for directed verdict, and have given him the benefit of all favorable inferences from the facts. *See Jackson v. Prudential Ins. Co. of Am.*, 736 F.2d 450, 453 (8th Cir.1984).

7. Mo.Ann.Stat. § 217.375 (Vernon 1983) provides in part:
   1. An inmate who has violated any rule or regulation of the division or institution relating to the conduct of inmates may, after proper hearing and upon order of the chief administrative officer of the institution, be confined in an adjustment unit for a period not to exceed ten days.
   2. When it is determined by the chief administrative officer of an institution that an

## II.

Defendants contend that the district court erred in refusing to direct a verdict in their favor, arguing that no clearly established right exists to call witnesses "and/or" be represented by counsel substitute or to receive a hearing within three working days of confinement.[8] In reviewing the district court's refusal to grant defendants' motions for directed verdict, we must draw all favorable inferences from the facts in Brown's favor. The trial court must be affirmed if there is substantial evidence to support a verdict in Brown's favor. *See Jackson v. Prudential Ins. Co. of Am.*, 736 F.2d 450, 453 (8th Cir.1984). Because we hold that defendants are immune under a qualified immunity defense, we reverse the trial court's denial of defendants' motion for directed verdict because no evidence can support a verdict in Brown's favor on these claims.

### A. Qualified Immunity

Under § 1983, a prisoner may sue a state official in his individual capacity when

inmate is an immediate security risk, or an inmate is violent, struggling and creating sufficient disturbance to indicate he is not in control of himself, or an inmate is physically violent, or an inmate is in urgent need to be separated from others for his own safety or that of others, the chief administrative officer of the institution may transfer the inmate to an administrative segregation unit which shall be situated so that the segregation of such inmates from the other inmates of the institution shall be in all respects complete. A hearing shall be held concerning the incident within seventy-two hours.

In applying this statute, Missouri regulations provide that the hearing shall be held "at the next regular meeting of the adjustment committee, or within three working days following [the prisoner's confinement in administrative segregation], whichever comes first." Mo. Eastern Correctional Center Rule 20–1112.060(3)(D) (1985). Because the first regular meeting of the Adjustment Committee took place more than three working days after Brown's confinement, the statute and regulation as applied require a hearing within three working days following confinement.

8. The defendants raised the issue of qualified immunity regarding the right to call witnesses and the right to a hearing within three working days in their motion for directed verdict.

acting under color of state law he deprives the prisoner of rights guaranteed by the Constitution or federal laws.[9] However, prison officials are immune from suit on the basis of qualified good faith immunity unless (1) their conduct violated a constitutional right of the plaintiff-prisoner that was clearly established prior to the time of the alleged acts of the prison officials; (2) they knew or should have known of the clearly established right at the time of the violation; and (3) they knew or should have known that their conduct violated that right. *Cleavinger v. Saxner*, 474 U.S. 193, 207, 106 S.Ct. 496, 503, 88 L.Ed.2d 507 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Procunier v. Navarette*, 434 U.S. 555, 562–63, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978).

The Supreme Court recently examined the scope of the "clearly established" standard.

The operation of [the clearly established law] standard ... depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow.* ... [O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

■ Although a prison official is not always immune from liability merely because there is no case establishing a constitutional right in identical circumstances, if there is a legitimate question as to whether the more particularized constitutional right exists under the facts of the case, it cannot be said that the prison official's action violated clearly established law. *See Mitchell v. Forsyth,* 472 U.S. 511, 534–35 & n. 12, 105 S.Ct. 2806, 2819–20 & n. 12, 86 L.Ed.2d 411 (1985). With these background principles to guide our inquiry, we now turn to the defendants' claims of qualified immunity.

### B. Right to a Hearing Within Three Working Days

■ Defendants first argue that the district court erred in refusing to direct a verdict in their favor on the claim that Frey and Lynch failed to hold a hearing within three working days of Brown's confinement. The district court rejected defendants' motion without explanation. Brown argues on appeal, however, that the district court should be affirmed because a protected liberty interest under the Due Process Clause arises when a state repeatedly uses explicit "mandatory language in connection with requiring specific substantive predicates." *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983).[10] In this case, the state did use

---

9. The statute provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an ac-

tion at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1982).

10. In support of his position, Brown also cites *Howard v. Armontrout*, 729 S.W.2d 547 (Mo. App.1987). Brown's reliance on this case is wholly misplaced. Although we do not reach the merits of Brown's argument that *Howard* supports his position, we do note that *Howard* was decided two years after the alleged wrong-

mandatory and explicit language when creating a hearing right.[11] Therefore, Brown argues that the Missouri statute created a federally protected due process right to a hearing within three working days after his confinement, which defendants violated by not holding the hearing for fifteen days.

Brown misinterprets *Hewitt*. *Hewitt* does not hold that if a state employs explicit and mandatory language in connection with requiring specific substantive predicates, the entire state statute will be elevated to the level of federal constitutional law, the violation of which would constitute a violation of clearly established federal law. Instead, *Hewitt* stated only that the mandatory language raises a protected liberty interest. Because such an interest is raised, the court's inquiry is not whether the statute and therefore the Constitution is violated but whether the process afforded plaintiff "satisfied the minimum requirements of the Due Process Clause." *Id.*

The *Hewitt* Court did not hold that the minimum requirements of the Constitution require adherence to the state statute. On the contrary, the Court held that if a protected liberty interest is raised by a state statute, to satisfy due process the prisoner must be given an "informal, nonadversary review of the information supporting [the prisoner's] administrative confinement, including whatever statement [the prisoner] wished to submit, *within a reasonable time* after confining him to administrative segregation." *Id.* (emphasis added). Al-

though the state statute and its corresponding regulations are violated if no hearing is held within three working days, the Constitution is violated only if (1) the state statute raises a protected liberty interest by explicit and mandatory language and (2) the hearing is not held within a reasonable time.

Missouri's statute raises a protected liberty interest because the requirement of a hearing within three working days after confinement in administrative segregation is explicit and mandatory. As a result, Brown had a clear constitutional right of which defendants should have been aware to an informal hearing within a reasonable time following confinement. However, we need not reach the issue of whether the fifteen-day delay was reasonable. The only issue properly before this court on appeal is whether the district court erred in refusing to grant defendants' motion for directed verdict because Frey and Lynch were entitled to qualified immunity on Brown's claim defendants violated his constitutional right to a hearing within three working days.[12] Therefore, because no such constitutional right to a hearing exists, clearly established or otherwise, we hold that the district court erred in refusing to direct a verdict in favor of Frey and Lynch on this issue. As a matter of law, Frey and Lynch are immune from liability on this hearing claim based on

ful acts of the defendants took place. Therefore, *Howard* cannot be cited as authority that the right to a hearing within three working days was clearly established federal law in 1985. *See Procunier*, 434 U.S. at 561–62, 98 S.Ct. at 859–60; *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 222, 37 S.Ct. 524, 531, 61 L.Ed. 1086 (1917) (Holmes, J., dissenting) (no clearly established law even if presence of "brooding omnipresence in the sky").

11. "A hearing *shall* be held concerning the incident within 72 hours." Mo.Ann.Stat. § 217.375 (Vernon 1983) (emphasis added).

12. The only issue involving the right to a hearing raised before the district court and the jury was whether Frey and Lynch violated state prison rules and therefore the Constitution by not conducting a hearing within three working days. The district court granted Brown's motion to amend his pleading to conform with the

facts adduced at trial that Brown did not receive a hearing within three working days. Brown's counsel argued in support of the propriety of such an amendment when defense counsel made a motion for directed verdict based upon qualified immunity. Brown's counsel also argued to the jury at length that Frey and Lynch violated Brown's rights by not giving him a hearing within three working days. Furthermore, Jury Instruction 12 embodied Brown's strategy by allowing the jury to find a violation of the Constitution by identifying a constitutional right to a hearing within three working days following confinement. Brown did not argue, therefore, that his right to a hearing within a reasonable time had been violated, but only that his right to a hearing within three working days had been violated. Therefore, the latter issue is the one we shall consider.

their qualified good faith immunity defense.

## C. Right to Call Witnesses

■ Defendants next argue that the district court erred in refusing to direct a verdict in favor of Frey, B. Trickey, and L. Trickey on Brown's claim defendants violated his right to call witnesses at his contraband and false information hearings, both of which were held on February 26, 1985. In so doing, the court rejected defendants' qualified immunity defense. Brown argues that the district court's refusal to direct the verdict must be affirmed because the actions of defendants violated Brown's clearly established constitutional right to call witnesses at his disciplinary hearings.

As an initial matter, we must determine whether Brown had a clearly established constitutional right of which defendants should have been aware to call witnesses on his behalf at his disciplinary hearings. As of February of 1985, an inmate did have a clearly established constitutional right to call witnesses and present documentary evidence in his defense but only when doing so would not be "unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). The Supreme Court in *Wolff* highlighted the discretion which must be accorded prison officials in the administration of their prisons.

> [T]he unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. *We should not be too ready to exercise oversight and put aside the judgment of prison administrators....* Prison officials must have the necessary discretion to keep the hear-

ing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

*Id.* at 566, 94 S.Ct. at 2979 (emphasis added).

The deference accorded prison officials limits Brown's clearly established right to call witnesses by giving them broad discretion to reject an inmate's request for institutional security reasons, to prevent the undermining of prison authority, to foster correctional goals, to exclude irrelevant or unnecessary testimony, or testimony which could create a risk of reprisal. A less flexible rule would interfere with the administration of prisons and would be "untenable as a constitutional matter." *Id.* The discretion of prison officials is so broad that "it may be that a constitutional challenge to a disciplinary hearing [based upon an inmate's right to call witnesses] ... will rarely, if ever, be successful."[13] *Ponte v. Real,* 471 U.S. 491, 499, 105 S.Ct. 2192, 2197, 85 L.Ed.2d 553 (1985).

Brown requested three witnesses for his contraband violation hearing on February 27, 1985. The three witnesses were Major Delo, Lieutenant Arflack, and caseworker Rick Jones. After reviewing the record, we find that the reasons for not calling each of these witnesses was not arbitrary but was a decision properly committed to the discretion of the prison officials under *Wolff.*

B. Trickey identified several reasons why Major Delo was not called.[14] The classification team refused to call him because to do so would undermine prison authority by having one guard testify against another guard. Furthermore, because the classification team already had his statement on file, it was not necessary to call Major Delo. The team did not call Lieutenant

---

13. Plaintiffs rely on *Graham v. Baughman,* 772 F.2d 441 (8th Cir.1985), to strengthen their claim that a much broader right to call witnesses exists. However, *Graham* was decided after the alleged violations in this case. Therefore, we express no opinion on the merits of Brown's argument.

14. Because we must respect the discretion of prison officials, the officials need not state their reasons for refusing to call a specific witness until trial. *Ponte v. Real,* 471 U.S. at 496–98, 105 S.Ct. at 2195–97; *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979.

Arflack because he refused to offer any testimony helpful to Brown's case and was therefore irrelevant. Furthermore, the lieutenant was present at the hearing on February 27, 1985. Finally, the team did not call caseworker Jones because the officials believed it would undermine prison authority by having Jones, a guard, testify against another guard. Furthermore, Jones was no longer employed by the Missouri Department of Corrections. Each of the reasons given for not calling the requested witnesses is permissible under *Wolff*. Prison officials must be accorded great discretion to refuse to call witnesses who are irrelevant, unnecessary, or would undermine prison authority. Therefore, defendants Frey, L. Trickey and B. Trickey did not violate Brown's clearly established right to call witnesses at the February 27 contraband hearing. As a result, they are entitled to qualified immunity and are immune from liability.

Brown also requested two witnesses at his February 27, 1985 disciplinary hearing for giving false information. Brown sought to call Donnie Willen, an inmate, and Margaret Puff, a prison employee, to testify on his behalf. The team did not call Puff because they did not want to undermine prison authority by having a guard placed in a position of testifying against another guard, because she worked in a different housing unit and could not possibly have had anything to do with Brown's property and because as written the conduct violation did not involve Puff. The team did not call Willen because the violation as written did not involve him. Each of the reasons given is permissible under *Wolff*. Prison officials must have discretion to run the disciplinary hearings and impose swift and effective punishment where warranted. Where the prison officials in good faith find that a witness is not necessary, could not provide helpful information or would undermine prison authority if called, they cannot be said to have violated any of plaintiff's clearly established rights. *See Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979. Frey, L. Trickey and B. Trickey are immune from liability under the doctrine of qualified good faith immunity because they did not violate any clearly established constitutional right. Therefore, the district court erred in failing to direct a verdict in their favor.

### D. "And/Or" Be Represented By Counsel Substitute

■ Defendants next argue the district court erred in entering judgment on Jury Instruction 11[15] because Frey, L. Trickey and B. Trickey were entitled to qualified good faith immunity on the counsel substitute claim on the basis that Brown did not have a clearly established

---

**15.** Jury Instruction 11 states:

The plaintiff has the burden of proving each of the following propositions as to defendants, Bernice Trickey, Larry Trickey, and Gerard Frey:

FIRST: That on various occasions John Brown asked for certain witnesses *and/or for the assistance of a counsel substitute* in order to prepare for and present his defense at hearings on conduct violations; and

SECOND: That on one or more occasions when such requests were made, the requests were denied without just cause; and

THIRD: That defendants nonetheless pursued with prosecution of the conduct violations; and

FOURTH: That plaintiff John Brown had a right to call witnesses who were available, or to have statements of those witnesses presented, and *the right to have the assistance of counsel substitute;* and

FIFTH: That defendants knew, or should have known, that plaintiff had these rights

and that their acts in pursuing the conduct violations were in violation of John Brown's rights; and

SIXTH: That as a direct result of their acts, John Brown suffered damage.

You are to consider the above propositions as to each of the above defendants separately. If you find from your consideration of all the evidence that each of the propositions has been proved as to any one or more or all of the above defendants, then that defendant or those defendants are liable and your verdict should be for the plaintiff and against that defendant or those defendants.

But, if on the other hand, you find from your consideration of all the evidence that any of the propositions has not been proved against one or more or all of the above defendants, then that defendant or those defendants are not liable and your verdict should be against the plaintiff and for that defendant or those defendants.

*Id.* (emphasis added).

right to be represented by counsel substitute at his disciplinary hearing. However, defendants did not preserve their objections for review because they did not raise this issue until after the jury returned its verdict.[16] Therefore, we will only reverse the judgment entered on Jury Instruction 11 if the error constitutes "plain error in the sense that it has produced a miscarriage of justice." *See Jones v. Board of Police Comm'rs*, 844 F.2d 500, 504 (8th Cir.1988) (plain error applicable to claims not preserved in § 1983 actions), *cert. denied*, —— U.S. ——, 109 S.Ct. 2434, 104 L.Ed.2d 990 (1989). This plain error doctrine is extremely limited and is "confined to the exceptional case when the error seriously affected the fairness or the integrity of the trial." *Id.*

Reviewing Jury Instruction 11 as a whole, the district court's decision to allow the jury to find a constitutional violation from defendants' alleged denial of Brown's request for counsel substitute, and the entry of judgment pursuant to that instruction, we find plain error. The Supreme Court in *Wolff* declined to recognize a general right of a prison inmate to retain counsel substitute. *Wolff*, 418 U.S. at 570, 94 S.Ct. at 2981. Instead, the Court in *dicta*, stated that an illiterate inmate or an inmate faced with a complex issue which makes it unlikely he will be able to collect and present evidence necessary for an adequate comprehension of the case, should be free to seek counsel substitute. *Id.* This passage cannot provide the basis for a jury instruction that allows jurors to impose liability for the denial of Brown's request for counsel substitute nor can it provide the

basis for the court's entry of judgment. Initially, the *Wolff* Court's statements do not create a clearly established right but instead constitute *dicta.* Second, the Court stated that an inmate *should,* not *must,* as a matter of constitutional law, be allowed to seek counsel substitute. Finally, the Court limited its statement to a small class of inmates of which Brown is not a member. Brown is not only literate, he acted as the law clerk at MECC while incarcerated at that facility. Furthermore, the conduct violations of which Brown was charged were not complex. Therefore, defendants could not even arguably have violated Brown's clearly established constitutional rights to counsel substitute because no such right existed.

By giving Jury Instruction 11, the district court allowed the jury to find that defendant prison officials had violated Brown's constitutional rights even though defendants were entitled to immunity from liability. By entering judgment on this instruction, the court compounded its error in a manner which seriously affected the fairness of the trial especially since the jury imposed punitive damages against Frey, B. Trickey and L. Trickey on the basis of constitutionally appropriate conduct. We hold that Jury Instruction 11 as it pertains to an alleged right to counsel substitute and the entry of judgment thereunder constitutes plain error because defendants were entitled to qualified immunity on that issue and were therefore prejudiced by the failure of the court to recognize their immunity; the error involves a clear error whereby the instruction allowed the jury to find a constitutional violation based wholly upon conduct which could not possibly vio-

---

**16.** Defendants claim they raised a qualified immunity defense in paragraph 12 of their answer, in the memoranda submitted in support of their summary judgment motion and at the beginning of their motion for directed verdict. After a review of these motions, we conclude that defendants' objections were too general in nature to alert the district court of the grounds for their qualified immunity defense regarding the right to be represented by counsel substitute. Therefore, defendants did not preserve their claim on review. *See United States v. Helmel,* 769 F.2d 1306, 1316–17 (8th Cir.1985).

Defendants further claim that they could not have responded earlier to the counsel substitute claim because defendants did not know until

after Brown's closing that this claim would be argued to the jury. However, defendants had access to Jury Instruction 11, which permitted the jury to find a constitutional violation for denial of the right to be represented by counsel substitute even before defendants made their motions for directed verdict. Defendants could have objected to the jury instruction which included the right to be represented by counsel substitute, to Brown's closing, or to Brown's testimony concerning counsel substitute. Although defendants were or should have been on notice that the jury could find against them on this claim, defendants made no timely objection.

late the Constitution; and the defendants insofar as they remain prison officials will be chilled in the exercise of their future discretion if this error is not corrected. Therefore, we reverse the judgment against defendants Frey, L. Trickey and B. Trickey entered on that jury instruction and hold that these defendants are entitled to qualified immunity on this claim.

## III.

In his cross-appeal, Brown first argues that the district court erred in granting defendants' motion for summary judgment on his claim that defendants abridged his right of access to the courts by threatening him with transfer to another prison if he continued to file and pursue lawsuits. The district court focused on Brown's lack of a constitutionally protected interest in remaining at MECC.

Damage actions against government officials are subject to a heightened standard of pleading with sufficient precision " 'to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds.' " *Martin v. Malhoyt*, 830 F.2d 237, 254 (D.C.Cir.1987) (quoting *Hobson v. Wilson*, 237 U.S. App.D.C. 219, 737 F.2d 1, 29 (1984)). The evidence in the record does not support Brown's assertion that defendants threatened Brown with a transfer in retaliation for exercising his right to file lawsuits on his own behalf in the court system.[17] Because Brown has failed to plead threat of transfer in retaliation for filing lawsuits with sufficient precision, the only issue which remains is whether Brown has a clearly established constitutional right to avoid transfer. Because Brown has no such right, the district court properly granted summary judgment based on defendants' qualified immunity. *See Williams v. Walls*, 744 F.2d 1345, 1346 (8th Cir.1984) (per curiam).

Brown next argues on cross-appeal that the trial court erred in directing a verdict against Brown at the close of all evidence on Brown's claim that he was denied an impartial and fair hearing because B. Trickey, who was a member of the classification team which adjudged Brown's guilt on a number of conduct violations, and L. Trickey, who sat as a member of the Adjustment Committee which reviewed these judgments, were married. Although Brown is entitled to a fair and impartial hearing, Brown can identify no clear constitutional right to a hearing and review free from participation by married persons. Therefore, because we cannot say that such a right is of a clear constitutional nature, we must affirm the district court's decision to grant a directed verdict on this issue because defendants were entitled to qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

Brown further argues that the district court erred in granting defendants' motion for directed verdict on his claim that Captain Kennedy conducted an inadequate investigation of the insulting behavior conduct violation. Brown fails to identify any clearly established constitutional right to an adequate investigation. Brown relies on both *Green v. Nelson*, 442 F.Supp. 1047 (D.Conn.1977) and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Neither case is helpful to Brown's case. The *Green* court refused to examine whether the investigation was adequate as a constitutional matter. *Green*, 442 F.Supp. at 1053. Furthermore, in contrast to the facts of this case, the court found the officials in *Green* did not conduct any real investigation. *Id.* Finally, *Brady* is inapposite because it involves a criminal proceeding which is far removed from the internal administration of prisons. *Cf. Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2974 (prison officials have broad discretion over internal prison affairs). Even if Brown had a clear right to a fair

---

**17.** As the issue was presented at trial and on appeal, the only issue is whether Brown was threatened with retaliation because he filed lawsuits against prison officials in the courts. This issue as presented does not encompass whether Brown was threatened when he filed grievances in the prison system, nor does it encompass any alleged direct denial of access to the courts.

hearing, he has no clearly identifiable constitutional right to an "adequate investigation" of the insulting behavior charges. *See Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). Therefore, finding no clear constitutional right to an "adequate investigation," we affirm the district court's decision directing a verdict in favor of defendants on this issue.[18]

Finally, Brown alleges the district court erred in refusing to allow Brown to cross-examine Captain Kennedy on his prior perjury conviction after Captain Kennedy received an amended pardon three days after the start of trial stating the pardon was based on rehabilitation. Fed.R.Evid. 609(c) provides:

> Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

Captain Kennedy received a pardon for his prior perjury conviction several months before trial. This original pardon, however, failed to state the reason for the governor's action. Although obtained three days into trial, the amended pardon indicated it was based on rehabilitation. Rule 609(c) provides without enumerated exception that the evidence of conviction is not admissible when the witness has received a pardon based upon rehabilitation.

Brown cites several cases for the proposition that a district court has discretion to second guess a determination of rehabilitation made by the governor. Brown's cases, however, are inapposite. *Gurleski v. United States*, 405 F.2d 253 (5th Cir.1968), *cert. denied*, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969), is pre-Fed.R.Evid. 609(c) and therefore did not consider the rule's mandatory language of exclusion. *United States v. Wiggins*, 566 F.2d 944 (5th Cir.), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2859, 56 L.Ed.2d 793 (1978), did not involve a governor's pardon based upon rehabilitation but a first-hand determination by the district court that the defendant's release from a halfway house is evidence of rehabilitation sufficient under Fed.R.Evid. 609(c). Finally, *United States v. Ferguson*, 776 F.2d 217 (8th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986), did not involve a governor's pardon but an order of expungement signed by a county circuit court judge. The *Ferguson* court merely held it was not an abuse of discretion for the trial court to conclude that the expungement order was sufficient to satisfy the "equivalent procedure" language of Fed.R.Evid. 609(c). *Id.* at 222. When, as in this case, a witness receives a pardon for a conviction of perjury and that pardon is based upon rehabilitation, our inquiry ends. Because we decline to examine the credibility of the governor's statement that the pardon was based on rehabilitation, we affirm the district court's decision prohibiting Brown from cross-examining Captain Kennedy on his prior perjury conviction.

The judgment below is reversed in part and affirmed in part.

---

18. This is not a case where prison officials failed to perform any investigation whatsoever. In finding Brown guilty of the conduct violation, prison officials relied on a report compiled by the Department of Family Services, which had the primary responsibility for investigating the charges. In addition to the Department's report, the officials relied on several statements of the mother. Furthermore, Brown presented his side of the story with witnesses at his hearing. Although officials did not interview every person Brown wanted or conduct an exhaustive investigation, it is clear that the Adjustment Committee's finding of Brown's guilt was supported by "some evidence." *See Superintendent v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985).