Ronald KULOW, Plaintiff–Appellant,

v.

Crispus NIX; Charles Harper, Defendants–Appellees.

No. 93–2106.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1994.

Decided July 6, 1994.

---

Reta Noblett–Feld, Iowa City, IA, argued (John S. Allen, Laura G. Miller and Derrick Dyer, on the brief), for appellant.

Kristin Ensign, Des Moines, IA, argued, for appellees.

Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and KYLE,* District Judge.

LOKEN, Circuit Judge.

The principal issue in this § 1983 and habeas corpus action is whether Ronald Kulow is an illiterate and incompetent inmate of the Iowa State Penitentiary (ISP) who has a procedural due process right to counsel substitute at prison disciplinary hearings and classification reviews. A second issue is whether Warden Crispus Nix has been deliberately indifferent to Kulow's serious medical needs in failing to prescribe more effective drugs to control his epileptic seizures. The district court[1] dismissed Kulow's claims after an evidentiary hearing. We affirm.

## I.

Kulow suffered brain damage from meningitis as an infant. He completed the equivalent of sixth grade at a state hospital school but now reads at a third-grade level. He has an IQ between 70 and 74, at the low end of borderline intellectual functioning, and an explosive temper. He also endures grand mal epileptic seizures; medical staff treat his epilepsy with Dilantin and Phenobarbital and regularly review his seizure disorder at prison clinics.

In 1988, while residing in the general inmate population, Kulow was assaulted by inmate Jack Kime and suffered a complex skull fracture that required surgery. After release from the hospital, Kulow was placed in protective custody at his request. He later asked to return to the general inmate population but prison administrators instead placed him in involuntary protective custody because Kime and his inmate friends pose a continuing threat to Kulow's safety.

Kulow has now spent four years in involuntary protective custody. During this time, he has been disciplined many times for a variety of misconduct. As a result, he has spent five months in lockup and has lost over 354 days of good time. Kulow has received monthly classification reviews, as ISP regulations require, at which he has repeatedly complained that it is unfair to keep him in protective custody. Despite Kime's transfer to another facility, however, defendants advise that they will not return Kulow to the general population so long as Kime remains influential among other ISP inmates. Kulow has never requested nor been provided the assistance of counsel substitute at his disciplinary hearings or classification reviews.

---

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

1. The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa.

Kulow commenced this action against Warden Nix and hearing officer Charles Harper seeking damages, restoration of good time credits, and release from involuntary protective custody. After an evidentiary hearing, the magistrate judge recommended granting Kulow relief on his procedural due process claims to be afforded counsel substitute. The district court then held a supplemental hearing on the issue of Kulow's competence to respond to disciplinary charges and to represent himself at classification reviews. After hearing testimony from Kulow, Harper, and two other prison officials, the district court found:

that Kulow "has understood the [disciplinary] procedures well enough to defend himself";

that Kulow "has adequate understanding of the proceedings to know when he should request assistance of other inmates or from the presiding administrative law judge";

that "whenever [Kulow] was involved in proceedings, Harper independently determined that [Kulow] understood the proceedings well enough to proceed without assistance from a counsel substitute"; and

that "[n]one of the proceedings involving [Kulow] were so complex as to require that counsel substitute be appointed."

Based upon these findings, the district court concluded that Kulow "was not within the small class of inmates who would be entitled to receive advice or assistance from others during the course of prison disciplinary hearings. *See Brown v. Frey,* 889 F.2d 159, 169 (8th Cir.1989)." Kulow appeals the court's dismissal of his procedural due process and deliberate indifference claims.

## II. Counsel Substitute at Disciplinary Hearings.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that due process does not require prison administrators to provide inmates with counsel or counsel substitute at prison disciplinary hearings. However, the Court did not foreclose the issue Kulow raises in this case:

Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

418 U.S. at 570, 94 S.Ct. at 2982. We addressed this question in affirming a jury verdict for prison officials in *Brown v. Frey,* 889 F.2d 159, 169 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990):

Initially, the *Wolff* Court's statements do not create a clearly established right [to counsel substitute] but instead constitute *dicta.* Second, the Court stated that an inmate *should,* not *must,* as a matter of constitutional law, be allowed to seek counsel substitute. Finally, the Court limited its statement to a small class of inmates.... Brown is not only literate, he acted as the law clerk at MECC while incarcerated at that facility. Furthermore, the conduct violations of which Brown was charged were not complex.

█ Kulow argues that his borderline intellectual functioning, poor comprehension, and limited ability to communicate place him within the "small class of inmates" entitled to counsel substitute under *Wolff.* Therefore, he must be appointed counsel substitute at every disciplinary proceeding because he "is unable to adequately investigate and present factual contentions and theories." The contention implicit in this argument is that ISP officials have a constitutional duty to make a general inquiry into Kulow's competence that will then govern all his disciplinary proceedings. We reject that contention.

ISP procedures provide that "[i]lliterate, incompetent inmates ... shall be represented by a staff member at disciplinary hearings, as necessary." The district court found that hearing officer Harper determined at each disciplinary proceeding that Kulow was competent to respond to the charges and to adequately represent himself. The court fur-

ther found that Kulow is competent to defend himself against the types of non-complex disciplinary charges he has faced.

Assuming that an incompetent or illiterate inmate has a constitutional right to counsel substitute at prison disciplinary hearings—a question we left open in *Brown* and need not decide in this case[2]—Kulow has failed to prove a violation of that right. ISP's decision to make the competency inquiry on a case-by-case basis is constitutionally acceptable. The district court's findings that Kulow is competent to represent himself at non-complex disciplinary hearings are not clearly erroneous.[3] Thus, the district court properly dismissed this due process claim.

### III. Counsel Substitute at Classification Reviews.

■ Kulow argues that he has a protected liberty interest in being placed in the general inmate population and therefore must be afforded counsel substitute at classification reviews. We disagree. The ISP Policy on Protective Custody provides:

Inmates may be placed in involuntary protective custody for their own protection. A committee consisting of the Deputy Warden of Operations, Security Director, or the Treatment Director and other designated members may make this determination for any valid reason.

Kulow does not have a protected liberty interest in his classification at ISP because this regulation does not "contain[ ] 'substantive predicates' to the exercise of discretion and specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). The regulation speaks in permissive rather than "explicitly mandatory" language. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 464, 109 S.Ct. 1904, 1910–11, 104 L.Ed.2d 506 (1989).

Even assuming that Kulow has a protected liberty interest in his classification, due process requires only "an informal, nonadversary review of the information supporting [his] administrative confinement, including whatever statement [he] wishe[s] to submit." *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983). There is no right to counsel substitute at an informal classification review. *See Alston v. DeBruyn*, 13 F.3d 1036, 1042–43 n. 2 (7th Cir.1994); *Toussaint v. McCarthy*, 801 F.2d 1080, 1100–01 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The record reflects that Kulow has appeared at his classification reviews and expressed his desire to leave protective custody. That desire cannot outweigh the prison administrators' concern that prison safety would be compromised if this explosive-tempered inmate is released into the general population with Jack Kime and his friends. *See Hewitt*, 459 U.S. at 473, 103 S.Ct. at 872 ("safety of the institution's guards and inmates is perhaps the most fundamental responsibility of the prison administration"). This due process claim, too, was properly dismissed.

### IV. Deliberate Indifference.

■ Kulow argues that he has suffered more frequent epileptic seizures since being placed in involuntary protective custody, and Warden Nix has failed to prescribe more effective medication to control those seizures. Kulow explains that he "does not seek a specific drug regime," but rather "an appropriate evaluation by persons with expertise in his seizure disorder." Nix responds that he is not a physician and has no responsibility for prescribing Kulow's seizure medication.

Nix is not the proper defendant for this deliberate indifference claim. "[R]espondeat superior is not a basis for liability under 42 U.S.C. § 1983." *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir.1990). Warden Nix

---

2. ISP's regulations "do not expand the requirements of due process under the federal constitution." *Goff v. Dailey*, 991 F.2d 1437, 1441 n. 8 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 564, 126 L.Ed.2d 464 (1993).

3. For example, the record reflects that, at one disciplinary hearing, Kulow was found not guilty of "theft"—a serious offense—because he persuaded hearing officer Harper that another inmate had given him the items in question.

859

has no involvement with the treatment decisions made by ISP's medical services unit. Kulow has never complained to Warden Nix about his seizure medication nor asked Nix to provide an evaluation by an epilepsy specialist. In these circumstances, "if any claim of medical indifference ... is to succeed, it must be brought against the individual directly responsible for [Kulow's] medical care." *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir.1992).

The judgment of the district court is affirmed.

JOHN R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent.

The magistrate judge in a carefully crafted report and recommendation stated that Kulow suffers from mild mental retardation and falls within the "borderline range" of intellectual functioning. Two psychiatrists and a psychologist all agreed that Kulow had very poor verbal comprehension, verbal fluency, learning, memory, reading and writing skills, and that organic brain damage is at least partly responsible for his intellectual deficiencies. They disagreed on whether his explosive temper was the result of an organic personality disorder or was psychological in origin.

In my view, an individual with Kulow's limitations should have had counsel or counsel substitute appointed to deal with his complaints concerning continuing protective custody and with his disciplinary proceedings for prison rule violations.

The magistrate judge relied on dictum in *Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974), that where the complexity of an issue makes it unlikely that an inmate will be able to collect and present evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate or substitute counsel. Further, the magistrate judge referred to ISP rules calling for assistance of inmates by staff at disciplinary hearings "as necessary." The magistrate judge concluded that Kulow's mental deficiencies and the complexity of the

issues relating to his responsibility for his behavior are such that due process requires that he be afforded counsel substitute at prison disciplinary hearings.

I think the court today errs in affirming the order that rejects the magistrate judge's findings. If the due process clause has any meaning, an individual such as Kulow should be provided counsel or counsel substitute to assist in presenting his case.