_____

No. 94-2964
_____

Nathaniel Hudson,            *
                             *
        Appellant,           *   Appeal from the United States
                             *   District Court for the
    v.                       *   Northern District of Iowa.
                             *
Paul Hedgepeth,              *
                             *
        Appellee.            *
_____

            Submitted: September 11, 1995

              Filed: August 16, 1996
_____

Before BOWMAN, BRIGHT, and BEAM, Circuit Judges.
_____

BOWMAN, Circuit Judge.


    Nathaniel Hudson, an inmate at the Iowa Men's Reformatory,
appeals the order of the District Court[1] denying his 28 U.S.C.
§ 2254 (1994) petition for habeas corpus relief.  We affirm.


                              I.


    After receiving confidential complaints indicating that Hudson
was strong-arming inmates at the Reformatory, prison officials
placed him in lockup and segregated him from the general
population.  After an investigation, Hudson received the following
disciplinary notice:

_____

    [1]The Honorable John A. Jarvey, United States Magistrate Judge
for the Northern District of Iowa, who presided over the case with
the consent of the parties in accordance with 28 U.S.C.
§ 636(c)(1994).

> Within the past 60 days, Resident Hudson conspired with Resident Daniel 804349A-7 and Resident Harlman 804757A-11 to intimidate, assault and rob other residents of their personal property. These assaults and robberies took place in the yard.
>
> The identities of persons providing confidential information during the course of this investigation have been deleted from this report in order to preserve the security, tranquility and good order of the institution.

Disciplinary Notice, No. 0803583A-2 (Iowa Dep't of Corrections Mar. 9, 1989). A disciplinary hearing was set and Hudson requested witness statements from various staff members. Hudson planned to use these statements to build his alibi defense, contending that he was so busy with scheduled activities that he would not have had the time to participate in the alleged wrongdoing.

The disciplinary committee considered the witness statement of one staff member, Senior Correctional Officer Owen Domer, who testified that Hudson worked for him on the yard crew. Domer stated that Hudson's work schedule was such that he would have had ample opportunity to commit the alleged offenses. Hudson himself stated that he had free time in his daily routine, and that no one would be able to account for his activities during those times. The disciplinary committee accepted as true Hudson's account of his activity schedule. Having done so, the disciplinary committee determined that the requested testimony of other staff members would not be necessary because the additional testimony, even assuming that it fully corroborated Hudson's own account, would not exonerate him.

Hudson was found guilty of the charges and was sentenced to 20 days of solitary confinement, 180 days of disciplinary detention, and the revocation of 90 days of his good-time credits.[2]  Hudson

---

[2]Because this is a habeas case in which Hudson seeks restoration of his good-time credits, we have not treated his

appealed to the warden and the director of the Iowa Department of Corrections, but both affirmed the disciplinary committee's decision.

After exhausting state post-conviction remedies, Hudson filed the present federal habeas action. In his petition Hudson raised three grounds for relief based on alleged due process violations: (1) the disciplinary notice did not give him adequate notice of the charges against him; (2) officials denied his request to call certain witnesses to establish his activities during the time period in question; and (3) officials denied his request for counsel substitute to assist in the preparation of his defense. The District Court denied Hudson's petition, concluding that the prison officials did not violate Hudson's due process rights because (1) the disciplinary notice sufficiently apprised Hudson of the charges against him; (2) the requested witness testimony was cumulative and would not exonerate Hudson; and (3) Hudson did not have an absolute right to, nor did he require, counsel substitute.

Hudson now appeals the District Court's ruling, claiming that he was denied due process because prison officials refused (1) to provide him with counsel substitute; and (2) to call certain witnesses at his disciplinary hearing.

**II.**

---

action as governed by <u>Sandin v. Conner</u>, 115 S. Ct. 2293, 2301 (1995). In <u>Sandin</u> an inmate brought a 42 U.S.C. § 1983 damages claim against prison officials for, among other things, a deprivation of procedural due process in connection with a prison disciplinary hearing. The Court held that the inmate had no liberty interest in avoiding disciplinary confinement because that confinement did not present an "atypical, significant deprivation" in relation to the ordinary incidents of prison life. <u>Id.</u> at 2301. Thus, the Court concluded that the inmate was not entitled to relief under § 1983.

-3-

Hudson argues that counsel substitute was necessary to help him mount an effective defense because important information was deleted from his disciplinary notice, such as the dates of the alleged incidents and the identities of the informants. Hudson does not contend in this appeal that the disciplinary notice was of itself insufficient and in violation of due process. Rather, he claims that if this information is going to be withheld from him, due process requires that counsel substitute be appointed to investigate the charges and to create a potential alibi defense. Hudson states that the role of counsel substitute could be filled by a prison employee who would be given access to the confidential information, including the dates the alleged conduct took place. Then, Hudson contends, counsel substitute would be able to investigate and establish where Hudson was at the times when the charged conduct occurred.

The Supreme Court allows counsel substitute "[w]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff v. McDonnell, 418 U.S. 539, 570 (1974). In so holding, the Supreme Court declined to recognize a general right of a prison inmate to have counsel substitute in disciplinary proceedings. Id. Indeed, counsel substitute is reserved for use with a small class of inmates, Brown v. Frey, 889 F.2d 159, 169 (8th Cir. 1989), cert. denied, 493 U.S. 1088 (1990), and we conclude that Hudson is not a member of that class. See also Brown-El v. Delo, 969 F.2d 644, 647 (8th Cir. 1992) (recognizing inmate is entitled to counsel substitute only in limited situations); Coleman v. Turner, 838 F.2d 1004, 1006 (8th Cir. 1988) (holding because inmate was not illiterate, she had no right to counsel at prison disciplinary hearing). Hudson is not only literate but he was taking college courses at the Reformatory. In addition, his written presentations to the disciplinary committee and administrative law judge were coherent and demonstrated an

-4-

understanding of the case against him. Furthermore, the violations with which Hudson was charged were not complex. Therefore, Hudson's claim that the defendant violated his constitutional right to counsel substitute fails because no such right existed in this case.

Although Hudson's case is not complex, nor is he illiterate, he argues that he was functionally disabled because he was segregated from the general population prior to his disciplinary hearing, and because important information was deleted from his disciplinary notice. In these circumstances, he claims that he is like an illiterate, deaf, or blind person because he is incapable of preparing his case without assistance. "Due process requires prison officials to inform a [prisoner] of charges to be brought against him or her and the evidence relied on in bringing those charges." Freitas v. Auger, 837 F.2d 806, 809 (8th Cir. 1988) (citing Wolff, 418 U.S. at 563-64)). We recognize that keeping confidential information from the prisoner in order to protect the identity of the confidential informant may have an impact on a prison inmate's ability to present a defense. See id. at 809. Prison officials have an interest, however, in preserving institutional safety and may exclude statements from notices and decisions where there is a risk of revealing the identity of a confidential informant. Id. In this case, we conclude that the disciplinary committee properly withheld the names of the confidential informants and the specific dates of the alleged events in order to protect the informants and to preserve institutional safety.

Mandating counsel substitute in all cases where confidential informants are involved would place counsel substitute in an untenable position of conflict where counsel must choose between his loyalty to the prison in safeguarding the confidential information and his duty as counsel to the inmate in preparing a defense. When investigating the charges against Hudson, counsel

-5-

substitute would be required to ask Hudson certain questions regarding, for example, his whereabouts on a given day or whether he had contact with a given inmate on a particular day. This inquiry would inevitably lead to Hudson's discovery of the identities of the confidential informants, which in turn would compromise prison security. Additionally, by opening the door for expansion of the counsel substitute concept, our courts would become increasingly intertwined in the prison's day-to-day decision-making processes because we would be forced to determine which cases warrant counsel substitute. This would place an additional and unnecessary burden on both the prison system and our courts. This determination is better left to the sound discretion of prison administrators.

## III.

Hudson also argues that he was denied due process when prison administrators refused his request to obtain statements from four witnesses who supervised Hudson in various prison activities. Hudson sought these witnesses to account for his whereabouts at the time of the alleged incidents. Prison officials have broad discretion to refuse to call witnesses when the projected testimony is irrelevant to the matter in controversy, is unnecessary, or creates a hazard to institutional safety or correctional goals. Wolff, 418 U.S. at 566; Brown, 889 F.2d at 168. "The discretion of prison officials is so broad that `it may be that a constitutional challenge to a disciplinary hearing [based upon an inmate's right to call witnesses] . . . will rarely, if ever, be successful.'" Brown, 889 F.2d at 167 (quoting Ponte v. Real, 471 U.S. 491, 499 (1985)).

In this case, the disciplinary committee indicated that the witnesses' statements were unnecessary because they would not help Hudson's defense. The committee determined that the testimony of other staff members would have been needlessly cumulative of the

testimony of Officer Domer because all witnesses agreed that there were times each day when they could not account for Hudson's whereabouts. Additionally, the committee accepted as true Hudson's rendition of what these witnesses would have testified to had they been called, and none of these witnesses could have provided Hudson with an alibi defense. Iowa State Men's Reformatory Adjustment Committee Reports, No. 803583A-2 (Iowa Dep't of Corrections Mar. 13, 1989). We therefore conclude that the hearing committee's refusal to obtain statements from these witnesses did not violate Hudson's due process rights.

## IV.

For the reasons stated above, we affirm the order of the District Court denying Hudson's 28 U.S.C. § 2254 petition for a writ of habeas corpus.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.