Harry Edward BURNSWORTH,
Plaintiff–Appellee,

v.

Greg GUNDERSON; Dan Vanelli; Lt.
Ballard; Anne Reeder; Paul Clark;
Merry Lutz; Thomas Lyerla, Defendants–Appellants.

No. 97–16599.

United States Court of Appeals,
Ninth Circuit.

Submitted May 10, 1999 [1]

Filed June 7, 1999.

Wanda E. Hofmann, Assistant Attorney
General, Tucson, Arizona, for the defendants-appellants.

1. The panel unanimously finds this case suitable for decision without oral argument. *See*      Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Harry Edward Burnsworth, Florence, Arizona, pro se, for the plaintiff-appellee.

Before: LAY,[2] PREGERSON, and HAWKINS, Circuit Judges.

PREGERSON, Circuit Judge:

Defendants are officials of the Arizona Department of Corrections (ADOC). They appeal the district court's order that an escape conviction be expunged from Plaintiff Harry Edward Burnsworth's prison records. The district court ordered defendants to expunge plaintiff's record because it found the escape conviction to be based on *no* evidence whatsoever. Defendants argue that the district court erred by ordering them to expunge a disciplinary conviction from plaintiff's prison records because the court previously concluded that defendants had not violated plaintiff's due process rights. We affirm.

## I.

Plaintiff was an inmate at the Arizona State Prison Complex in Tucson, Arizona. In early 1995, a confidential prison informant told prison officials that plaintiff was going to be hurt because he allegedly owed a debt. Accordingly, Officer Gunderson told plaintiff on February 3, 1995, that he was going to place plaintiff in protective segregation. Plaintiff requested to remain in the general population because he did not believe the threat was serious. Gunderson granted the request but required plaintiff to sign a protective custody waiver form.

On March 14, 1995, plaintiff approached Gunderson and Officer O'Hara and requested protective segregation because he was having problems with a couple of oth-

er inmates. Plaintiff stated that if he were returned to the general population, his only option would be to "hit the fence." Plaintiff was then transferred to a lockdown facility.

The next day, Gunderson and O'Hara asked plaintiff to explain what he meant by "hit the fence." Plaintiff explained that if he were returned to the general population, he would be forced to "hop the fence and run all the way to Tucson." Gunderson then charged plaintiff with escape, an ADOC disciplinary infraction.

A preliminary hearing was held March 16, 1995. Plaintiff was present and was permitted to question Officer O'Hara. A disciplinary hearing was held on April 7, 1995. Plaintiff was found guilty and sanctioned—40 hours extra duty and 30 days in Parole Class III. In addition, Disciplinary Hearing Officer Lt. Charles Ballard recommended plaintiff be reclassified as an escape and security risk.

Plaintiff appealed to Deputy Warden Daniel Vanelli, who upheld Ballard's findings. Central Office Classification Officer Capt. Merry Lutz denied plaintiff's second appeal.

On August 1, 1995, plaintiff appeared before the Institutional Classification Committee (ICC). The ICC recommended that plaintiff be reclassified as a security risk. This recommendation was based on the March escape charge and the fact that plaintiff had been found guilty of other prison disciplinary infractions in the past. Deputy Warden Vanelli reviewed and concurred in the ICC's recommendation, and plaintiff was transferred to a maximum security facility at Florence, Arizona.

Plaintiff filed this 42 U.S.C. § 1983 action in which he alleged that the prison's disciplinary and classification procedures violated his due process rights. Plaintiff also alleged that defendants had conspired to retaliate against him for filing griev-

---

**2.** The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

ances and assisting other inmates in bringing § 1983 actions. Plaintiff sought a declaration that the disciplinary and classification procedures violated his rights under the due process clause of the Fourteenth Amendment. Plaintiff also sought money damages on his retaliation claim.

On summary judgment, the district court granted plaintiff's request for a declaratory judgment that defendants had violated his procedural due process rights. In granting this relief, the district court found that "there was no evidence, much less 'some evidence' that [plaintiff attempted to escape]," and that plaintiff "is entitled to judgment as a matter of law that his March 16, 1995 . . . disciplinary hearing was devoid of evidence to support a finding of guilty of escape." *See Superintendent v. Hill,* 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (requiring that prison disciplinary convictions be supported by "some evidence" in order to satisfy due process). Accordingly, the district court concluded that "the hearing violated Plaintiff's Fourteenth Amendment constitutional rights." The district court ordered that the "finding of guilt . . . be removed from Plaintiff's inmate record."

Defendants moved the court to reconsider its ruling. The court agreed to do so. On February 18, 1997, the court reviewed *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and determined that plaintiff's claims did not implicate a protected liberty interest. The court then concluded that defendants were entitled to judgment as a matter of law on plaintiff's procedural due process claim. The court set a trial date for plaintiff's remaining retaliation claims.

Plaintiff then filed a ·"Request that Court Order Defendants to Expunge Conviction from Files; Motion to Reconsideration Court's Latest Order." The court denied the motion on March 27, 1997.

On or before the day the trial on plaintiff's retaliation claims was to begin, plaintiff moved to dismiss those claims. On June 26, 1997, the court granted plaintiff's motion and dismissed plaintiff's claims with prejudice.

In dismissing plaintiff's remaining claims, the court noted that plaintiff's escape conviction still remained on his ADOC record. After again reviewing *Sandin,* the court sua sponte vacated its March 27, 1997, order. The court noted that, unlike the prison officials in *Sandin,* defendants here refused to expunge plaintiff's record of the unsubstantiated escape conviction. The court then restated its belief that plaintiff had not "experience[d] an atypical and significant hardship in relation to ordinary incidents of prison life when he was transferred to another prison facility." But the court nevertheless reasoned that expungement of the escape conviction from plaintiff's record was "appropriate," and that "Plaintiff should not have to explain away the conviction at any future proceeding, including future parole hearings." Accordingly, the court ordered that "Defendants shall expunge Plaintiff Harry Edward Burnsworth's escape charge." It is this order that defendants appeal.

## II.

■ As we have noted, the district court found that "there was no evidence, much less 'some evidence' that [plaintiff attempted to escape]." Plaintiff correctly argues that prison disciplinary convictions must be supported by "some evidence" in order to satisfy procedural due process. *See Hill,* 472 U.S. at 457, 105 S.Ct. 2768.

■ But defendants are also correct in their argument that a district court commits error if it orders expungement of a disciplinary conviction after concluding that defendants had not violated plaintiff's rights. *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 399, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (a district court may not grant "injunctive relief against a party found not to have violated any substantive right").

The disposition of this appeal, therefore, hinges on whether defendants violated plaintiff's procedural due process rights.

### A.

■ It is well-established that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see Erickson v. United States,* 67 F.3d 858, 861 (9th Cir.1995) (" '[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake' ") (quoting *Schroeder v. McDonald,* 55 F.3d 454, 462 (9th Cir.1995)).

> [T]hese interests will be *generally* limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* 515 U.S. at 483, 115 S.Ct. 2293 (citations omitted) (emphasis added).

Defendants do not argue that plaintiff was afforded a fair hearing. Rather, defendants argue that plaintiff cannot be heard to complain that his disciplinary process violated due process because he has not demonstrated the existence of a "liberty interest" as required by the Court in *Sandin.* The essence of defendants' argument is that inmates must demonstrate the existence of a liberty interest before they can argue that they are entitled to procedural due process. *See Erickson,* 67 F.3d at 861.

■ Moreover, defendants argue that plaintiff was not entitled to relief in the district court because (1) the Supreme Court has generally limited a prisoner's "liberty interests" to those restraints which "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin,* 515 U.S. at 483, 115 S.Ct. 2293; (2) the district court concluded that plaintiff suffered no such atypical hardship;[3] and (3) the plaintiff has not contested this conclusion. We disagree.

### B.

■ It is true that "once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly." *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, ——, 118 S.Ct. 1244, 1253, 140 L.Ed.2d 387 (1998) (O'Connor, J., concurring in part and concurring in the judgment) (quotation omitted). But it is incorrect to state that due process is not violated when a prison disciplinary hearing board convicts an inmate of escape after that board holds a hearing at which no shred of evidence of the inmate's guilt is presented. *See Hill,* 472 U.S. at 454, 105 S.Ct. 2768 ("revocation of good time [credits] does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by *some* evidence in the record"); *California v. Green,* 399 U.S. 149, 187 n. 20, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring) ("[d]ue process does not permit a conviction based on no evidence"); *Thompson v. City of Louisville,* 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) ("Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man

---

**3.** Defendants correctly note that the possibility of denial of parole at some later date does not amount to the denial of a liberty interest. As the Court noted in *Sandin,* "[t]he decision to release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record." 515 U.S. at 487, 115 S.Ct. 2293. The Court in *Sandin* held that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*

without evidence of his guilt.") (quotation, citation, and footnotes omitted).

In this case, plaintiff's due process rights are violated even if plaintiff has demonstrated no cognizable liberty interest. For example, it is well-established that prisoners have no liberty interest in clemency proceedings because the decision to grant or deny clemency rests wholly in the discretion of the executive. *See Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Woratzeck v. Arizona Bd. of Executive Clemency,* 117 F.3d 400, 403 (9th Cir.1997). But a majority of the justices of the Supreme Court nonetheless believe that "some minimal procedural safeguards apply to clemency proceedings." *Woodard,* 523 U.S. at ——, 118 S.Ct. at 1254 (O'Connor, J., concurring in part and concurring in the judgment).[4]

And the concept that once the state conducts a hearing it must be a fair one is not limited to the clemency context. In his separate opinion in *Woodard,* Justice Stevens notes that "[e]ven if a State has no constitutional obligation to grant criminal defendants a right to appeal, when it does establish appellate courts, the procedures employed by those courts must satisfy the Due Process Clause." *Id.* at ——, 118 S.Ct. at 1255 (Stevens, J. concurring in part and dissenting in part) (citing *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). "[E]ven if a State has no duty to authorize parole or probation, if it does exercise its discretion to grant conditional liberty to convicted felons, any decision to deprive a parolee or a probationer of such conditional liberty must accord that person due process." *Id.* (Stevens, J., concurring in part and dissenting in part) (citing *Morrissey v. Brewer,* 408 U.S. 471, 480–90, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)).

*Hill* and other cases stating that a prisoner has an interest in avoiding punishments arbitrarily imposed only "[w]here a prisoner has a liberty interest" do not compel a contrary conclusion. 472 U.S. at 454, 105 S.Ct. 2768. The Court in *Hill* did not address a situation where a conviction was totally unsupported by evidence. *See id.* at 450, 105 S.Ct. 2768. Rather, *Hill,* like *Wolff v. McDonnell,* 418 U.S. 539, 547, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), restates the fundamental principle of due process in prison disciplinary hearings— "the minimum requirements of procedural due process" require that "the findings of the prison disciplinary board [be] supported by some evidence in the record." *Hill,* 472 U.S. at 454–55, 105 S.Ct. 2768 (also stating that "[r]equiring a modicum of evidence to support a [prison disciplinary's board's decision] will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens").

### III.

◼ We hold that the district court's expungement order was the appropriate remedy for the wrong suffered by plaintiff. *See United States v. Sweeney,* 914 F.2d 1260, 1264 (9th Cir.1990) (appropriateness of expungement remedy is judged on a case-by-case basis and is appropriate "where the maintenance of such records would be fundamentally unfair") (quotation omitted). A contrary conclusion ignores the core of our concept of procedural due process. *See Wolff,* 418 U.S. at 558, 94 S.Ct. 2963 ("The touchstone of due process is protection of the individual against arbitrary action of government.").

AFFIRMED.

---

4. Justice O'Connor's opinion was joined by Justices Souter, Ginsburg and Breyer. Justice Stevens, who concurred in part and dissented in part in *Woodard* agreed that due process imposed a constitutional minimum standard of fairness. *See Woodard,* 523 U.S. at ——–——, 118 S.Ct. at 1254–55 (Stevens, J., concurring in part and dissenting in part) (some "minimal" requirements of due process apply in clemency proceedings).