JAMES P. and Lucille P., on their own behalves and on behalf of their minor son Robert P., Plaintiffs,

v.

Paul LEMAHIEU, in his official capacity as Superintendent of the Hawaii Public Schools; Robert Ginlack, in his official capacity as Principal of Mililani High School, Defendants.

No. CV 99–00861 DAE–LEK.

United States District Court, D. Hawaii.

Jan. 12, 2000.

Principal of Mililani High School, defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

DAVID ALAN EZRA, Chief Judge.

The court heard Plaintiffs' Motion on January 10, 2000. Stanley E. Levin, Esq., and Carl M. Varady, Esq., appeared at the hearing on behalf of Plaintiffs; Deputy Attorney General James Chang and Deputy Attorney General Holly Hishikata appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Plaintiffs' Motion for Preliminary Injunctive Relief.

### BACKGROUND

This civil case involves a Mililani High School student, Robert P., who was suspended from school for violating Act 90, which prohibits the possession of alcohol while attending school. Robert P.'s parents ("Plaintiffs") are seeking preliminary injunctive relief, on their own and their son's behalf, under the Due Process and Equal Protection Clauses of the 14th Amendment. The facts in this case are highly contested.

On November 10, 1999, Mililani High School held its senior luau at the Honolulu International Country Club. While Robert P. was preparing for the event, two of his friends waited for him within his home. According to Plaintiffs, during this time and outside of Robert's presence, his friends consumed alcohol in a closet in Plaintiffs' home. Robert claims that he did not participate in the consumption of alcohol at this time. However, Defendants assert that Robert's two friends informed them that Robert did in fact participate in the drinking at his home. Further, Robert admitted to providing the boys with the shot glass used to drink the alcohol.

Carl M. Varady, Stanley E. Levin, Davis & Levin, Honolulu, HI, for James P., on his own behalf and on behalf of his minor son Robert P., Lucille P., on her own behalf and on behalf of her minor son Robert P., Robert P., minor son of James P. and Lucille P., plaintiffs.

Russell A. Suzuki, Office of the State Attorney, General, Honolulu, HI, for Paul Lemahieu, in his official capacity as Superintendent of the Hawaii Public Schools, Robert Ginlack, in his official capacity as

Once Robert was ready, the three boys proceeded to the luau. At the event, because one of the friends became ill and the other was visibly drunk and disrupting the activity, school officials questioned the three youths about whether they had been drinking. After a few minutes, the two friends confessed to drinking at Robert P.'s house that night. The officials also questioned Robert about the drinking and he repeatedly denied participating. No disciplinary action was taken at this time against any of the boys. As a result, Robert was able to participate in the State Championships for High School Cross–Country held in Maui on November 11, 1999.

Though the boys were allowed to return to the luau to its conclusion and Robert was able to participate in the track championships, Robert and his two friends were called into the school office on the following Monday, November 15, 1999 for further questioning with Vice–Principal George Okino and Principal Robert Ginlack. During the questioning, Robert's two friends allegedly admitted to the drinking of alcohol prior to the school event and confirmed that Robert P. had also been involved in the consumption of rum. According to Defendants, Ginlack then interviewed Robert and informed him of the reasons underlying the suspicion that Robert consumed alcohol prior to the luau. Robert denied the allegations of his drinking and explained his version of the evening which only included the admission that he provided his friends with a shot glass. Following the questioning and based on the investigation, the officials informed Robert that he was being suspended from school for consuming alcohol.

Ginlack then called Lucille P. to inform her that her son was being suspended from school "for participating in the consumption of alcohol" at his home prior to the luau in violation of the school's "zero tolerance policy" under Act 90, 1996 Session Laws, H.B. No. 3862, Hawaii Revised Statutes ("HRS") § 302A–1134.5(a) ("Act 90"). He also told her that Robert was subject to a maximum of 92 days of suspension under the statute. Act 90 reads, in pertinent part, as follows:

> Any child who is found to be in possession of a dangerous weapon, switchblade knife, intoxicating liquor, or illicit drugs while attending school, may be excluded from attending school for up to ninety-two school days, as determined by the principal and approved by the superintendent or other individuals designated pursuant to rules adopted by the board. In any case of exclusion from school, the due process procedures of the department adopted pursuant to chapter 91, shall apply to any child who is alleged to be in possession of a dangerous weapon, switchblade knife, intoxicating liquor, or illicit drugs while attending school; provided that if the exclusion is for less than ten days, the provisions of Hawaii administrative rules, title 10, chapter 19, related to student discipline, shall apply. If a child is excluded from attending school, the superintendent or superintendent's designee shall ensure that substitute educational activities or other appropriate assistance are provided, such as referral for appropriate intervention and treatment services, as determined by the principal in consultation with the appropriate school staff.

HRS § 302A–1134.5(a).

In response to Ginlack's phone call, Lucille P. went to the school to discuss the matter with him. While the provision allows for up to ninety-two days, Ginlack informed Lucille P. that he would only impose a five-day suspension if Plaintiffs would sign an agreement mandating that their son complete drug and alcohol counseling. According to Defendant Ginlack, he and other school officials decided to suspend Robert P. under the provision since he consumed alcohol and facilitated his friends' drinking prior to the school event and they attended the luau intoxicated. Also, Defendants allege that Lucille P. was never informed of any "anonymous tips" stating that her son had been drink-

ing, nor did she ask for such information to be put into writing.

According to Plaintiffs, on or about November 17, 1999, James P. spoke to Ginlack on the telephone and inquired about the evidence the school had of Robert's participation in the consumption of alcohol. Ginlack responded by stating that the investigation was closed and would not be reopened, and that there is no appeal process. Then, when James P. contacted the superintendent to question the decision, the superintendent told him that Ginlack's ruling would not be disturbed and the punishment would remain intact.

After this interaction between the parties, James and Robert P. met with Ginlack at Mililani High School on November 22, 1999. During the meeting, Ginlack informed James P. that Robert would face the full ninety-two day suspension unless James P. would agree to the five-day suspension and mandatory drug and alcohol counseling program. According to Plaintiffs, Ginlack imposed this ultimatum despite the fact that James P. offered statements from Robert P.'s two friends asserting that Robert P. did not consume any alcohol or provide them with alcohol on the night of the luau prior to attending the event. Plaintiffs allege that Ginlack "refused to review or consider" the "exculpatory" evidence. At the conclusion of the meeting, James P. signed the agreement form to reduce his son's suspension, allegedly only because of Ginlack's threat of further suspension if he refused to do so.

However, Defendants provide a different version of the meeting between the parties. Ginlack asserts that after informing James P. of the available options, James P. rejected the five-day suspension and counseling program option. Then, the events allegedly transpired as follows:

Upon hearing James P.'s position, Principal Ginlack informed James P. that he had never had a parent refuse the disciplinary measures he had proposed, and that he would have to determine what ramifications might result from this re-

fusal... Upon hearing this, James P. grabbed the disciplinary form from Principal Ginlack and signed it; at no time did Principal Ginlack force or otherwise coerce James P. into signing the disciplinary form.

Plaintiffs allege that this process has caused extreme emotional distress, harm, pain and suffering, humiliation and embarrassment since Robert P. is barred from participating in all athletic events for the remainder of the year and is not allowed to make up his class work for the classes that he missed during his suspension. Also, he was barred from all school social activities for the remainder of the semester and has been denied consideration for athletic or academic awards. Finally, the suspension will always be on Robert P.'s educational records. They allege that this punishment will cause irreparable harm since Robert is applying for colleges and is likely to receive a scholarship for his athletic prowess. In sum, Plaintiffs claim that the suspension will "severely compromise his reputation and, thereby, affect his future scholastic and athletic endeavors."

However, Defendants again offer a different side of the story. They provide that Robert has already served the suspension and is now attending school. Also, he was not prohibited from participating in his track competition since his suspension did not begin until after the state championships, though the school's athletic rules prohibit him from participating in athletics for the remainder of the school year. Further, he is no longer prohibited from participating in extracurricular social activities since that was only applicable during the first semester. Thus, the only remaining disciplinary action against Robert is his counseling program, the prohibition from athletic participation, the notation on his educational record and his inability to make up his assignments during the suspension.

As a result of these events and their beliefs, Plaintiffs filed this Motion for Preliminary Injunction on December 28, 1999.

Defendants filed their Opposition on January 6, 2000.

## STANDARD OF REVIEW

In *Miller v. California Pacific Medical Ctr.*, 19 F.3d 449 (9th Cir.1994), the Ninth Circuit set forth the standard for granting a preliminary injunction as follows:

> Traditionally we consider (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief.

*Id.* at 456 (citing *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir.1987)). Recently, however, the courts have simplified the inquiry as follows:

> The moving party must show 'either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits.'

*Miller*, 19 F.3d at 456 (quoting *Senate of California v. Mosbacher*, 968 F.2d 974, 977 (9th Cir.1992)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* at 456. These formulations are not discrete tests, but the extremes of a single continuum. *See Los Angeles Memorial Coliseum Comm. v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980).

Accordingly, "[i]f the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988). At an irreducible minimum, however, plaintiff must demonstrate a fair chance of success on the merits or questions serious enough to require litigation. *See Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir.1987). Moreover, under any formulation of the test, the plaintiff must demonstrate a significant threat of irreparable injury. *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985).

The grant or denial of a temporary restraining order is reviewed for abuse of discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132—33 (9th Cir. 1979).

## DISCUSSION

In this Motion, Plaintiffs argue that Defendants' suspension of Robert P. under Act 90 is unconstitutional under the Due Process and Equal Protection Clauses of the Constitution. Further, they claim that irreparable harm will result if this injunction does not issue. To succeed on this Motion, Plaintiffs must show that they are likely to succeed on the merits of their constitutional claims and that irreparable harm will result in the absence of an injunction. The court will consider the factors in turn.

### 1. *Likelihood of Success on the Merits*

### A. *Due Process Claims*

Plaintiffs argue that the Due Process Clause has been violated in this case in two ways: (1) Defendants have no evidence that Robert P. violated Act 90; or, in the alternative, (2) if Act 90 does apply to Robert P.'s actions, then it is too ambiguous to provide "fair notice" to citizens of what conduct is actually forbidden by its provisions and encourages arbitrary enforcement by state officials. These arguments are based on the due process concepts that one cannot be punished without evidence that he violated some law and, before punishment is invoked, a statute must clearly set forth what conduct is for-

bidden by its provisions so that a reasonable person can conform his or her behavior to comply with its requirements.

Initially, to trigger the Due Process Clause and its protections, a plaintiff must first show that he has a specific entitlement to the liberty or property interest allegedly denied by the government. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If an individual fails to satisfy this requirement, the state may deny plaintiff of the interest without a hearing and for any reason. *Meachum,* 427 U.S. at 228, 96 S.Ct. 2532.

In light of this requirement, the Supreme Court has ruled that children have a constitutional property interest in public education and a liberty interest in their reputation. *Goss v. Lopez,* 419 U.S. 565, 574–5, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). More specifically, the Court held that states must "recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause" and that "the minimal requirements of the Clause must be satisfied" when a school's action tarnishes a student's reputation. *Id.* (" 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied"). Therefore, at least the minimal protections of the Due Process Clause apply when a school suspends a student for an extended period of time and places such suspension on the student's permanent record. *Id.* at 576, 95 S.Ct. 729.

Consequently, students facing suspension from school must be given notice and afforded some kind of hearing before any punishment is invoked. *Id.* at 578, 95 S.Ct. 729. Further,

Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

*Id.* at 581, 95 S.Ct. 729.

Unlike a right to public education and liberty of reputation, however, a student has no constitutional right to participate in school athletic or social activities. *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1352–53 (9th Cir.1981); *Mitchell v. Louisiana High School Athletic Association,* 430 F.2d 1155, 1158 (5th Cir. 1970); *Colorado Seminary (University of Denver) v. NCAA,* 417 F.Supp. 885, 896 (D.Colo.1976), aff'd, 570 F.2d 320 (10th Cir.1978); *Makanui v. Department of Education,* 6 Haw.App. 397, 721 P.2d 165 (1986). Therefore, if Robert P. was punished under the authority of the athletic department's rules, it is very unlikely that Plaintiffs will prevail on the merits of their claim that the school violated the Constitution by not allowing Robert P. to participate in athletic events for the remainder of the school year.

(1) *The "Evidence of Guilt" Requirement*

Plaintiffs' first argument is that Defendants' violated due process requirements when they allegedly punished Robert P. without evidence that he violated Act 90. As *Thompson v. City of Louisville,* 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), holds, "it [is] a violation of due process to convict and punish a man without evidence of his guilt." *Id.; Harris v. United States,* 404 U.S. 1232, 1233, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971) ("it

is beyond question, of course, that a conviction based on a record lacking any relevant evidence as to a crucial element of the offense charged would violate due process"); *Vachon v. New Hampshire,* 414 U.S. 478, 479, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974). While the above cases apply to criminal convictions, the Ninth Circuit has also upheld the "evidence of guilt" requirement in administrative decisions. For instance, in *Burnsworth v. Gunderson,* 179 F.3d 771, 773 (9th Cir.1999), a prisoner was punished by the prison disciplinary committee for attempted escape even though there was no evidence of the offense. The court held that "prison disciplinary convictions must be supported by 'some evidence' in order to satisfy procedural due process." *Id.* Hence, since it would be fundamentally unfair to punish someone for some wrongdoing that he did not commit, a disciplinary body must have evidence of a statutory violation by an individual before it may punish that individual.

In this case, since Act 90 prohibits "possession of ... intoxicating liquor ... while attending school," Defendants must provide evidence that Robert P. in fact *possessed* alcohol while attending school. Though it is disputed by Plaintiffs, Defendants assert that they have evidence, namely testimony from Robert's friends, that he consumed alcohol *prior* to the school luau on November 10, 1999 and attended the event with alcohol in his system. Robert P. claims that he did not drink any alcohol that evening.

 Under these facts, it does not appear that Defendants have any evidence of a statutory violation since Robert did not "possess intoxicating liquor ... while attending school" even if he did drink liquor prior to the school event. Under facts most favorable to Defendants, at worst, Robert was guilty of being intoxicated at a school function, which is not covered by the statute unless "possession" is interpreted to include "present in the body." This is an unlikely interpretation, especially since the context of the provision pro-

hibits the possession of other tangible items, such as knives and weapons items which cannot be consumed. If the state legislature had intended to prohibit being intoxicated at school events versus possessing and consuming liquor at these events, the statute as drafted simply fails to cover this activity. Consequently, it is very likely that Plaintiffs will prevail on the merits of this claim at trial since there is no evidence that Robert "possessed intoxicating liquor" while he was at the senior luau.

### (2) *"Fair Notice" and "Avoiding Arbitrary Enforcement"*

Plaintiffs' second argument is that if Robert P.'s conduct fell within Act 90, due process was violated because the statute was too vague since it did not provide sufficient notice to "a person of ordinary intelligence" of what conduct is forbidden by its provisions. It is well-settled that a statute must clearly set out what conduct is prohibited by its provisions to provide notice to citizens and avoid arbitrary enforcement. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). In *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954), the Court held that

> [t]he constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

*Id.; see also, Papachristou,* 405 U.S. at 162, 92 S.Ct. 839 (striking a statute down because it violated the Due Process Clause since it was "void for vagueness").

 While they still consider the "notice to citizen's" interest, more recent cases have focused on the doctrine's interest in avoiding arbitrary enforcement. For instance, *Kolender v. Lawson,* 461

U.S. 352, 357–58, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), asserts that

[a]lthough the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

*Id.* (citing *Smith v. Goguen,* 415 U.S. 566, 571–74, 94 S.Ct. 1242, 1247–48, 39 L.Ed.2d 605 (1974)). Thus, regardless of whether it is to provide notice to citizens or to avoid arbitrary enforcement, it is clear that the Due Process Clause requires statutes to clearly set forth the type of conduct that is forbidden by its provisions.

In this case, for reasons stated above, Plaintiffs are again very likely to prevail on the merits of this claim since the statute is ambiguous if "possession" of alcohol was interpreted to mean "present within the body." It is likely that a court would conclude that this statutory wording does not provide "fair notice" to students that they will be punished if they attend school functions after drinking elsewhere but not bring or consume liquor at the function. Also, it would encourage "arbitrary enforcement" to interpret the statute in this manner since it would allow the schools to interpret statutes freely, regardless of the content and context of the rest of the provision. Importantly, though, this court does not in any way question the constitutionality of a correct application of Act 90, as it applies to students guilty of "possessing intoxicating liquor while attending school."

### B. *Equal Protection Claim*

Plaintiffs also argue that Defendants' conduct violates the Equal Protection Clause since "government officials cannot single out a person with intent to injure that person." To prevail on an equal protection challenge, a party

has the burden of showing, "with convincing clarity that the classification is not rationally related to the statutory purpose," or that "the challenged classification does not 'rest upon some ground of difference having a fair and substantial relation to the object of the legislation,'" and is therefore "arbitrary and capricious."

*Washington v. Fireman's Fund Ins. Companies,* 68 Haw. 192, 708 P.2d 129, 134 (1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986). Further, if the classification in the statute has a reasonable basis, it is not unconstitutional simply because its application results in an inequity. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

In this case, one of the purposes of Act 90 is to keep alcohol and its use out of the schools by suspending students who "possess alcohol while attending school." Since this is not a suspect classification, there is no other evidence that any other classification was used to punish Robert P. or other students under the Act, and Act 90 serves a rational government interest, it is very unlikely that Plaintiffs will prevail on the merits of their Equal Protection Clause claim.

### 2. *Possibility of Irreparable Harm and Balance of Hardships*

Though Plaintiffs do not specifically address the issue of "irreparable harm," they argue that their claims "indisputably constitute irreparable harm." Since Plaintiffs are very likely to succeed on the merits of their claims relating to Robert P.'s punishment under Act 90, the required degree of irreparable harm in the absence of the injunction is low. In this Motion, Plaintiffs seek an order that does the following: (1) rescinds all disciplinary action against Robert P. imposed as a result of the events taking place on November 10, 1999; (2) expunges from Robert

P.'s record any reference to the disciplinary action taken in this case; (3) permits Robert P. to make up course work he missed during his suspension; (4) permits Robert P. to participate in athletic activities and receive any awards for which he is eligible; and (5) deems that the consent James P. and Lucille P. gave for punishment and counseling is void because it was obtained by improper and unlawful means. The court will consider each request in turn.

First, there is a legitimate possibility of irreparable harm that could result from not rescinding disciplinary action prior to the end of the litigation. For example, Robert P.'s college applications will be tarnished since the actions taken by the school will be on his record, his grades will suffer if he is not able to make up his work and he will not be able to compete in athletic events. It is also very possible that his inability to participate in track and field later this year will negatively affect his ability to obtain an athletic scholarship at an university. Further, under the Act 90 punishment, he must attend his counseling program for the duration of the proceedings. This also satisfies the irreparable harm prong of the preliminary injunction determination because time is a valuable commodity for high school students and the program requires Robert P. to attend sessions when he could otherwise be participating in many other school-related events. Thus, Plaintiffs' Motion is GRANTED to the extent it covers the rescission of disciplinary action taken under the authority of Act 90. Thus, Robert P. is not required to attend the counseling program for the duration of the proceedings.[1]

Second, Plaintiffs request that the court expunge from Robert's records all references to the instant incident and disciplinary action taken in this case. Plaintiffs have shown that irreparable harm could result if the punishment is on Robert's record since his college applications will

suffer and his likelihood of being accepted will probably be diminished.

■■■ Despite the possibility of irreparable harm to Robert, Defendants claim that Plaintiffs cannot proceed with this request in district court since they have failed to exhaust administrative remedies available to them under Hawaii Administrative Rules § 8–34–10, which provides students with an opportunity to expunge the student's record of unwarranted punishment. However, since their case is being brought pursuant to 42 U.S.C. § 1983, they are not required to exhaust their administrative remedies prior to bringing an action in federal court. *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ("Based on the legislative histories of both § 1983 and § 1997e, we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"). Consequently, because Plaintiffs are likely to win on the merits of their due process claims and likelihood of irreparable harm has been shown, the court GRANTS Plaintiffs' Motion as it relates to expunging Robert's record of the school's disciplinary action under Act 90.

Third, Plaintiffs specifically request that the court allow Robert to make up his course work that he missed because of his suspension. As stated above, since his work may suffer if he is not allowed to make it up until after the proceedings have concluded, irreparable harm will result if the court does not permit Robert to turn in his work for credit. Also, his grades will necessarily be lower if he is not allowed to turn in the assignments. Finally, money damages are not an appropriate remedy for this type of injury. Therefore, especially since this does not cause Defendants to suffer any serious hardship, Plaintiffs' Motion is GRANTED to the extent that Robert P. is allowed to make up all course work and academic assignments for

---

**1.** The implications and details of this relief will be discussed and laid out during the

discussion of the particular requests made by Plaintiffs.

credit that he missed as a result of his suspension. However, if Defendants prevail in this case, Robert's work will once again not be counted towards his final grades in the courses.

Fourth, Plaintiffs request that Robert be allowed to participate in his athletic activities and receive any awards for which he is available. Since it is likely that Robert P. has no property or liberty interest in athletic participation or awards, Plaintiffs are not likely to prevail on the merits concerning this request if the actions were taken pursuant to the school's athletic handbook. Consequently, if Defendants could offer evidence showing that they punished Robert under the school rules, Plaintiffs would then have to show that grave irreparable harm that cannot be compensated with money damages would result if the court does not grant this request, or that the balance of hardships weighs in their favor.

However, the record before the court shows that this ban from athletic participation, like the remainder of the disciplinary actions, was instituted pursuant to Act 90. Thus, as stated above, Plaintiffs must only show a possibility of irreparable harm since they are likely to succeed on the merits of this claim since the instant application of Act 90 violates due process and any punishment pursuant to it is invalid.

In light of this, Plaintiffs argue that since Robert will not be allowed to engage in his soccer and track-and-field activities, in which Plaintiffs claim that he excels, his college applications will suffer, and he will be denied an opportunity to compete for scholarships and otherwise enjoy the competition that is often an integral part of one's high school years. Further, they claim that if Robert is required to wait until the end of this litigation, his athletic seasons will be over and he will have been improperly denied an opportunity to participate. The court agrees with Plaintiffs and GRANTS their Motion as it relates to Robert P.'s athletic participation. Therefore, Robert P. may engage in his school's athletic events for the duration of these proceedings.

Finally, Plaintiffs request that the court deem Robert's parents' consent to be void because it was improperly obtained. Initially, it is questionable whether Plaintiffs will prevail on this claim under the facts of this case since there is conflicting testimony and no evidence of duress or other improper means used to obtain James P.'s signature on the consent form. Also, the effect of James P.'s December 7, 1999 withdrawal of consent is questionable. Regardless of the likelihood of success on the merits, no irreparable harm will result if the court does not grant this request since this order has already determined that all disciplinary action taken pursuant to Act 90 is rescinded during the proceedings and, specifically, Robert is not required to attend counseling for the duration of the trial. Therefore, it is not necessary to void the consent at this point in the litigation since it would not cause any hardship to Plaintiffs. Consequently, Plaintiffs' Motion is DENIED to the extent it covers this request. However, if Plaintiffs desire to seek this determination for evidentiary or other purposes later in the litigation, they may do so at the appropriate time in another motion.

*CONCLUSION*

The injunction shall issue as indicated above.

IT IS SO ORDERED.