**Jeremy GAUTHIER, Petitioner,**

v.

**Debra DEXTER (Warden)
et al., Respondents.**

**Case No. SACV 07–00476–SJO(RC).**

United States District Court,
C.D. California.

Aug. 19, 2008.

Jeremy Gauthier, Blythe, CA, pro se.

Amanda Lloyd, Deputy Attorney General, Office of the Attorney General, San Diego, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

S. JAMES OTERO, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable S. James Otero, United States District Judge, by Mag-

istrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On August 29, 2004, while petitioner Jeremy Gauthier was confined in the California Men's Colony East, a state prison in this judicial district, he was found, following a disciplinary hearing, to have trafficked in narcotics (heroin) on prison grounds in violation of California Code of Regulations ("C.C.R.") § 3016(c).[1] and he was penalized with the loss of 180 days of work time credits, among other things. Lodgment no. 2. The petitioner appealed this disciplinary decision through the California Department of Corrections and Rehabilitation's grievance procedure, where it was affirmed at all levels. *See* Lodgment nos. 3–5.

On January 4, 2006, petitioner filed a habeas corpus petition in the Riverside County Superior Court (case no. RIC443431) challenging the determination he violated prison rules and the resultant loss of good time credits, and on May 1, 2006, the Superior Court denied the petition. Lodgment nos. 6–7. On June 16, 2006, petitioner filed a habeas corpus petition in the California Court of Appeal (case no. E040688), which denied the petition on July 5, 2006. Lodgment nos. 8–9. Finally, on August 1, 2006, petitioner tardily filed a

petition for review in the California Supreme Court (case no. S145457), which denied the petition on September 20, 2006. Lodgment nos. 10–11.

### II

Effective April 15, 2007, petitioner filed the pending habeas corpus petition under 28 U.S.C. § 2254 challenging his prison discipline and seeking restoration of 180 days of credits and expungement of all references to the disciplinary decision from his central file. On August 1, 2007, respondent filed her answer, and on August 30, 2007, petitioner filed his reply.

In the pending habeas corpus petition, petitioner raises the following claims:

Ground One—"Petitioner's due process rights ... were violated with prejudice when the petitioner was not given the date and the time of the [sic] alleged offence in the written notice of rules violation as required by California Penal Code Section 2932, subdivision (c)(1)(A)";

Ground Two—"Petitioner's due process rights ... were violated with prejudice when the petitioner was not provided with in [sic] the written notice [of] all the evidence to be relied upon in the disciplinary proceedings as required by California Penal Code Section 2932, subdivision (c)(1)(A)";

Ground Three—"Petitioner's due process rights ... were violated with prejudice when the petitioner was not provided with as much information as could have

---

1. Rule 3016(c) provides that "[i]nmates shall not distribute, as defined in section 3000, any controlled substance or controlled medication." 15 C.C.R. § 3016(c). Rule 3000 provides:

> Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health

facility, or community correctional· facility for the purpose of sales or distribution.

15 C.C.R. § 3000. Rule 3000 also defines controlled medication as "any drug which is prescribed by a physician and is given to an inmate in controlled dosages[,]" and controlled substance as "any substance, drug, narcotic, opiate, hallucinogen, depressant, or stimulant as defined by California Health and Safety Code section 11007." *Id.*

been provided from the confidential reports as possible without revealing the source of the information as required by California Code of Regulations, Title 15, Section 3321, subdivision (b)(3)(B)";

Ground Four—"Petitioner's due process rights ... were violated with prejudice when the petitioner was not provided with an impartial hearing officer who was independent of the case as required by California Penal Code Section 2932, subdivision (6)(1)(A), and California Code of Regulations, Title 15, Section 3320, subdivision (b)";

Ground Five—"Petitioner's due process rights ... were violated with prejudice when the petitioner was not provided with all the evidence to be relied upon in the hearing as required by California Code of Regulations, Title 15, Section 3320, subdivision (c)(1)";

Ground Six—"Petitioner's due process right[s] ... were violated with prejudice when the petitioner was not found guilty based on a preponderance of the evidence which substantiates the charge as required by California Penal Code Section 2932, subdivision(c)(5) and California Code of Regulations, Title 15, Section 3320, subdivision (1)"; and

Ground Seven—"Petitioner's due process rights were violated ... with prejudice when the petitioner was found guilty of a disciplinary action that was not based on some evidence[.]"

## DISCUSSION

### III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim [¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority. *Pinholster v. Ayers,* 525 F.3d 742, 756 n. 11 (9th Cir.2008); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, since no state court has provided a reasoned decision addressing the merits of petitioner's claims, this Court must conduct "an independent review of the record" to determine whether the California Supreme Court's ultimate decision to deny those claims was contrary to, or an unreasonable application of, clearly established federal law. *Pinholster,* 525 F.3d at 756 n. 11; *Medley v. Runnels,* 506 F.3d 857, 863 n. 3 (9th Cir.2007) (en banc), *cert. denied,* —— U.S. ——, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008).

### IV

■ A federal court, in conducting habeas review, is limited to deciding whether a state court decision violates the Constitution, laws or treaties of the United States.

28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *McGuire*, 502 U.S. at 67, 112 S.Ct. at 480; *see also Dugger v. Adams*, 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T] he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."). Thus, to the extent petitioner bases Grounds One through Six on alleged violations of state laws, such as California Penal Code § 2932 and/or various California prison regulations, his claims are not cognizable in this proceeding. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (habeas petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process"), *cert. denied*, 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997); *Walker v. Sumner*, 14 F.3d 1415, 1419–20 (9th Cir. 1994) (When state prison regulations provide a prisoner with more extensive protections than those *Wolff* requires, the due process clause does not require the state to comply with its own, more generous procedures), *overruled on other grounds*, *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

 However, petitioner also claims he was deprived of his federal constitutional right to due process of law during various aspects of his prison disciplinary proceedings. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). Rather, the Supreme Court has held that, in the context of prison disciplinary hearings, due process requires only certain procedural safeguards: (1) the inmate should receive "advance written notice of the claimed violation" so the inmate can marshal the facts and prepare a defense; (2) "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare" for the hearing; (3) the inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (4) "[w]here an illiterate inmate is involved, ... or [where] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case," the inmate should be given assistance at the hearing; and (5) the inmate should receive "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563–70, 94 S.Ct. at 2978–82 (internal quotation marks omitted). Additionally, inmates are entitled to a fair and impartial decision-maker at disciplinary hearings, *see Edwards v. Balisok*, 520 U.S. 641, 647, 117 S.Ct. 1584, 1588, 137 L.Ed.2d 906 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence."), and "the requirements of due process are satisfied if some evidence supports the [disciplinary] decision." *Superintendent, Mass. Corr. Inst. v. Hill*,

472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); *Burnsworth v. Gunderson,* 179 F.3d 771, 773 (9th Cir.1999). On the other hand, due process does not require that an inmate be permitted to confront or cross-examine his accusers. *Baxter v. Palmigiano,* 425 U.S. 308, 321–22, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976); *Wolff,* 418 U.S. at 567–68, 94 S.Ct. at 2980; *see also Zimmerlee v. Keeney,* 831 F.2d 183, 187 n. 2 (9th Cir.1987) (per curiam) ("Confrontation and cross examination are not generally required and are left to the sound discretion of the prison official."), *cert. denied,* 487 U.S. 1207, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988). Nor do inmates have a right to counsel in disciplinary proceedings. *Wolff,* 418 U.S. at 569–70, 94 S.Ct. at 2981.

■ Here, in Grounds One through Three and Five, petitioner claims he received insufficient notice of the charges against him because the written notice did not include the exact date and time of the alleged offense and did not include all the evidence to be used against him. The Court disagrees. On July 30, 2004, Correctional Officer R.C. McLain wrote a Rules Violation Report ("RVR") or CDC 115, Log no. A–04–08–2103, which was provided to petitioner on August 8, 2004,[2] charging him, his cell mate George Carter, and two other inmates (Hardman and Walker) with narcotics (heroin) trafficking within the prison grounds, allegedly occurring "over the course of approximately six weeks, during the month of June 2004, through the first week of July 2004...." Lodgment no. 2 at 1. More specifically, petitioner and Carter were charged with:

> multiple occasions, during which [they] passed bindles of heroin, wrapped in cellophane, through their rear cell window to inmates on the A–Quad yard.

> (Note: At the time of these transactions, CARTER and [petitioner] were housed in Cell 1101, which provides rear-window access to the A–Quad yard).

*Id.* Further, the RVR set forth the evidence supporting these charges:

> Numerous independent confidential sources of various ethnic backgrounds witnessed the activities as described. Some inmate sources incriminated themselves in illegal activities, and some of the sources have previously provided information that was proven to be true. However, some specific details have not been divulged in this report, as to do so would enable other inmate's [sic] identity of the confidential sources and would endanger the safety of these sources.

*Id.* at 2.

Additionally, on August 8, 2004, petitioner was given written notice, i.e., a Confidential Information Disclosure Form ("Form") of a "Confidential memorandum dated July 30, 2004[,] authored by Correctional Officer R.C. McLain contained in the confidential section of [petitioner's] central file." Lodgment no. 12 at 1. The Form identified the following confidential information:

> [D]uring the month of June 2004 thru [sic] the first week of July 2004, inmates CARTER[ ], GAUTHIER[ ], HARDMAN[ ], and WALKER[ ] conducted numerous narcotic transactions in A Quad. Much of the drug trafficking was facilitated by inmates CARTER and GAUTHIER, who would pass bindles of Heroin through their rear cell window (cell 1101), to inmates on the yard. Inmates HARDMAN and WALKER, whom witnesses saw selling Heroin, obtained their supply of Heroin from inmates CAR-

---

**2.** At his disciplinary hearing, petitioner "acknowledged receiving copies of the charges and all pertinent documents at least 24 hours prior to the hearing[,]" Lodgment no. 2 at 1, and petitioner does not dispute this. *See* Petition, Exh. A.

TER and GAUTHIER in this manner, on numerous occasions.

\* \* \*

During the week of June 28, 2004, Inmate witnesses saw CARTER, HARDMAN and WALKER on the A–Quad yard near Building One. Inmate sources saw CARTER with several bindles of heroin, which he passed to HARDMAN and WALKER for the purpose of selling on the yard.

Lodgment no. 12 at 1–2. The confidential information was considered reliable because the sources had previously provided confidential information that proved true, more than one source independently provided the same information, the sources incriminated themselves in a criminal activity at the time of providing the information, and part of the information the sources provided had already proven true. *Id.* at 1. Thus, petitioner was given more than adequate written notice of the nature "of the claimed violation," as well as the nature of the evidence against him, and such notice was provided well in advance of his disciplinary hearing on August 29, 2004. *See Zimmerlee*, 831 F.2d at 188 (inmate received sufficient notice of charges against him when "notice charged [inmate] with smuggling marijuana and amphetamines into the prison with members of the Screaming Eagles from February 13, to July 23, 1984" and "on at least one occasion during a Club meeting [another] inmate ... had supplied drugs to [the inmate]"); *Freitas v. Auger*, 837 F.2d 806, 809 (8th Cir.1988) (notice was constitutionally adequate when it alleged inmate had within the last 60 days "talked with other inmates in the institution about planning an escape through the hobby-craft/school building" even though "it did not specify the dates of the alleged conversations, where they took place, their content or who participated in them" since providing inmate with further specifics could have endangered confidential informants who provided the information).

■ The petitioner's disciplinary hearing was held on August 29, 2004, before Lieutenant J.T. Torres, a correctional officer. *See* Lodgment 2 at 1, 3–5, 8–9. In Ground Four, petitioner claims he was denied due process of law because Lt. Torres was not an impartial hearing officer since he found petitioner guilty of possession of contraband—a $100.00 bill—in a prior disciplinary hearing, and cited this prior decision in finding petitioner guilty here.[3] *See* Petition, Exh. D. The petitioner's claim is without merit. Disciplinary hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary hearing." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir.2003) (per curiam), *cert. denied*, 540 U.S. 1114, 124 S.Ct. 1049, 157 L.Ed.2d 904 (2004); *see also Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion ... [and] opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

■ Finally, in Grounds Six and Seven, petitioner claims he was denied

---

**3.** In his decision in this matter, Lt. Torres stated:

In his Confidential Report, Correctional Officer Mc Lain documents that there are some facts that lend credibility to this Con-

fidential Report. Those facts are that in [sic] 06–01–04, [petitioner] was found in possession of a $100.00 bill (Refer to Rules Violation Report Log # A–04–06–1538)....

Lodgment no. 2 at 3.

due process of law because there was no evidence supporting his guilt since the confidential informants relied upon could easily have manufactured their statements.[4] As set forth above, all that due process requires in the context of a prison disciplinary hearing is that "some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Hill,* 472 U.S. at 455, 105 S.Ct. at 2774; *see also Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987) ("The *Hill* standard is minimally stringent."). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [officer]." *Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774. "Nonetheless, there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions." *Cato,* 824 F.2d at 705.

■■■■ "[A] prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process when (1) the record contains some factual information from which the committee can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." *Zimmerlee,* 831 F.2d at 186. "Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an in camera review of the documentation from which credibility was assessed." *Id.* at 186–87. Additionally, "[p]roof that an informant previously supplied reliable information is sufficient." *Id.* at 187.

■■■■ Here, Lt. Torres found petitioner guilty of drug trafficking on prison grounds based primarily on the statements of confidential informants, who witnessed petitioner distributing heroin from his cell window. *See* Lodgment no. 2 at 3. Such information was "deemed very reliable" because the confidential sources had previously given reliable information, other confidential sources had independently corroborated the information, and the confidential sources incriminated themselves. Lodgment no. 2 at 2–3; Lodgment no. 12. These findings are sufficient to establish the reliability of the confidential information. *Zimmerlee,* 831 F.2d at 186–87. Additionally, Lt. Torres found that divulging the identity of the confidential informants would endanger the safety of those informants and prison security. Lodgment no. 2 at 1–3; *see also Hudson v. Hedgepeth,* 92 F.3d 748, 751 (8th Cir.1996)

---

4. Respondent claims in her answer that petitioner failed to administratively exhaust Grounds Six and Seven through the prison grievance process, and then conclusorily states that because petitioner did not administratively exhaust Grounds Six and Seven, those grounds "were not properly exhausted in the state courts and cannot be raised in the instant Petition." Answer at 4:15–22. However, there is no factual basis for respondent's claim. To the contrary, in his grievances, petitioner claimed "there is no established proof of the charge[,]" *see,* e.g., Lodgment no. 3, which is the bases of Grounds Six and Seven. Moreover, when the Director's appointee denied petitioner's appeal at the Director's Level, she specifically found "[a] preponderance of evidence submitted at the RVR hearing supports the finding of guilt in this matter[,]" Lodgment no, 5, demonstrating she fully understood petitioner was challenging the sufficiency of the evidence against him.

("Prison officials have an interest ... in preserving institutional safety and may exclude statements from notices and decisions where there is a risk of revealing the identity of a confidential informant."); *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir.1985) ("The government interest in institutional safety and an efficient disciplinary system are especially implicated when inculpatory information is provided by confidential informants because, 'revealing the names of informants ... could lead to the death or serious injury of some or all of the informants.'" (citation omitted)), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). Furthermore, Lt. Torres cited circumstantial evidence from which the inference of petitioner's drug trafficking may reasonably be drawn: On June 1, 2004, petitioner was found with a $100 bill hidden in his cell; and on July 2, 2004, petitioner's hands tested positive for methamphetamine and he refused to provide a urine specimen. *Id.* at 3–4; Lodgment nos. 12–13. Thus, "some evidence" existed supporting the determination petitioner violated Section 3016(c), and the revocation of 180 days of work credits was proper. *Zimmerlee*, 831 F.2d at 186–87; *Freitas*, 837 F.2d at 811–12; *see also Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir.1996) ("A prison disciplinary hearing must be supported by some evidence, and an informant's testimony is enough at least as long as there has been 'some examination of indicia relevant to [an informant's] credibility[.]'").

For all these reasons, the California Supreme Court's denial of petitioner's claims was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the habeas corpus petition and dismissing the action with prejudice.

DATE: July 15, 2008

### JUDGMENT

S. JAMES OTERO, District Judge.

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.